**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
Peter S. Pearlman, Esq.
Park 80 Plaza West-One,
Saddle Brook, NJ 07663
Telephone: 201/845-9600
201/845-9423 (fax)

**LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP**
Jack Reise, Esq.
Stuart A. Davidson, Esq.
James L. Davidson, Esq.
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809
Telephone: 561/750-3000
561/750-3364 (fax)

Attorneys for Plaintiff and the Class

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DAVID MURDOCK, Individually and as Father and Next Friend of BEAU FARISH MURDOCK and ANABELLE SAGE MURDOCK, Minor Children, on Behalf of All Others Similarly Situated, | : : : : : | No. _____ |
|             Plaintiff, | : : : | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
|    vs. | : : | |
| RC2 CORPORATION, LEARNING CURVE BRANDS, INC., LEARNING CURVE BRANDS, INC. d/b/a RC2 BRANDS, INC., WAL-MART STORES, INC. and TOYS "R" US, INC., | : : : : : | |
|             Defendants. | : : | |

Plaintiff David Murdock ("Plaintiff") whose residence address appears in paragraph 10, individually and as father and next friend of Beau Farish Murdock and Anabelle Sage Murdock, minor children, on behalf of all others similarly situated, files this Class Action Complaint against defendants RC2 Corporation, Learning Curve Brands, Inc., and Learning Curve Brands, Inc. d/b/a RC2 Brands, Inc., Wal-Mart Stores, Inc. and Toys "R" Us, Inc. (collectively, the "Defendants") and alleges as follows:

## INTRODUCTION

1.    This is a nationwide class action brought on behalf of Plaintiff and other consumers similarly situated who, during the period January 1, 2005 through June 13, 2007, purchased or were exposed to Thomas & Friends™ Wooden Railway Toys (the "Train Toys") that were manufactured and/or distributed by Defendants and were recalled due to lead poisoning hazards.

2.    The Train Toys are popular toys marketed and sold for use by young children and consist of a variety of small, bright-colored wooden trains with faces and names, and ancillary brightly-colored buildings and train set components. On June 13, 2007, defendant RC2 Corporation ("RC2 Corp.") initiated a nationwide recall of 1.5 million Train Toys that are manufactured in China and had been sold during the period January 1, 2005 to June 13, 2007 (the date of the recall). In its recall notice, RC2 Corp. stated that it has determined that the surface paints of the recalled Train Toys contain illegal lead and that lead is toxic if ingested by young children and can cause adverse health effects.

3.    Defendant RC2 Corp. is one of the nation's leading manufacturers of pre-school-aged children's toys. More than two-thirds of RC2 Corp.'s sales come from licensed big-name brand products sold to young children, and sales of the Thomas & Friends™ licensed products comprised more than 10 percent of RC2 Corp.'s total net sales of $518 million in 2006.

- 1 -

4. RC2 Corp. oversees the manufacture of the Train Toys and other toys at a factory complex known as the RC2 Industrial Zone located in Dongguan City, China. RC2 Corp. also employs hundreds of persons in China who oversee the sourcing of RC2 Corp.'s products, including the Toy Trains, and who assist its suppliers in sourcing raw materials; providing on-site quality control; facilitating third-party safety testing; and coordinating delivery of shipments for export from China to the United States.

5. RC2 Corp. and its operating subsidiary Learning Curve Brands, Inc. d/b/a RC2 Brands, Inc. ("Learning Curve"), distribute and sell the Train Toys through some of the largest chain retail stores located throughout the United States, including defendants Wal-Mart Stores, Inc. ("Wal-Mart") and Toys "R" Us, Inc. ("Toys R Us"). Sales at Wal-Mart and Toys R Us of products licensed and distributed by RC2 Corp. and Learning Curve accounted for approximately 30 percent of RC2 Corp.'s net sales in 2005 and in 2006.

6. Defendants designed, manufactured, marketed, advertised and warranted the Train Toys. In conjunction with each sale, Defendants marketed, advertised and warranted that the Train Toys were fit for the ordinary purpose for which such products were used – play toys for young children – and were free from defects and hazardous substances. Defendants manufactured and distributed the Train Toys intending that parents, grandparents and other gift-givers for pre-school-aged children purchase the products to be used as toys that are played with by such children.

7. Under federal laws, toys or other articles intended for use by children that contain an accessible hazardous substance, like lead paint, are banned because of the serious risk of lead poisoning.

8. The dangerous conduct of Defendants in manufacturing, marketing and/or distributing millions of children's toys covered in lead paint during at least the past two and one-half years (and possibly longer) has reasonably caused anxiety and fear among parents and guardians of

- 2 -

young children who have been exposed to the tainted Train Toys. Lead paint poisoning causes long-term, severe brain damage to young children. Exposure to lead paint in toys like the recalled Train Toys that have been held, licked, sucked on and slept with by young children for years creates an extreme unreasonable risk to young children. Plaintiff and other members of the Class would not have purchased the Train Toys had they known such products were defective and contained unlawful hazardous substances.

9.     As a result of the defective and hazardous products manufactured and/or distributed by Defendants, Plaintiff and other members of the Class have incurred damages, including, but not limited to, the purchase price of the toys and the expense of returning the toxic Train Toys to RC2 Corp. Plaintiff and the other members of the Class also seek equitable and injunctive relief, including a medical-monitoring program to detect and prevent serious injury associated with lead poisoning.

**PARTIES**

10.     Plaintiff is a resident of Jefferson County, Alabama, residing at 15 Honeysuckle Lane Birmingham, AL 35213, and is the father of minor children Beau Farish Murdock and Anabelle Sage Murdock. Within the applicable statute of limitations period, Plaintiff purchased certain Train Toys, two Red Sodor Line Cabooses and one Red Stop Sign from Wal-Mart and Toys R Us, which have been recalled by RC2 Corp. Plaintiff purchased the Train Toys for his children to play with, and at the time he purchased the toys, he was unaware that they were coated in toxic lead paint to which his children have been exposed.

11.     Defendant RC2 Corp. is a Delaware Corporation with its principal corporate office in Oak Brook, Illinois. RC2 Corp. was formed in April 1996 as a holding company, and its main domestic operating subsidiary is Learning Curve, which prior to January 2007 was doing business as and was known as RC2 Brands, Inc. RC2 Corp. also maintains a corporate office known as the RC2

- 3 -

Industrial Zone quarters in Dongguan City, China. RC2 Corp. designs, produces and markets toys and other pre-school and infant products, and a significant portion of its products (like the Thomas & Friends™ Wooden Railway Toys) are marketed with licenses from third parties. RC2 Corp. produces most of its toys and products in China.

12. Defendant Learning Curve is a Delaware corporation with its principal corporate office in Oak Brook, Illinois. Learning Curve is a wholly-owned subsidiary of RC2 Corp. and prior to January 2007, RC2 Corp. Learning Curve's corporate name was RC2 Brands, Inc. Learning Curve is the operating subsidiary through which RC2 markets the Train Toys.

13. Defendant RC2 Brands, Inc. operated as a subsidiary of RC2 Corp. until January 2007 when RC2 Corp. changed RC2 Brands, Inc.'s name to Learning Curve Brands, Inc. Prior to January 2007, RC2 Corp. marketed the Train Toys through RC2 Brands, Inc.

14. Defendant Wal-Mart is a chain retailer through which RC2 Corp. and Learning Curve (and Learning Curve d/b/a RC2 Brands, Inc.) distributed and sold the Train Toys during the period January 1, 2005 through June 13, 2007. Wal-Mart operates retail stores around the world and throughout the United States. Wal-Mart is a Delaware Corporation with its principal corporate office in Bentonville, Arkansas.

15. Defendant Toys R Us is the largest specialty retailer of toys in the United States. Toys R Us is a Delaware corporation and has its principal corporate office in Wayne, New Jersey. RC2 Corp. and Learning Curve distributed and sold the Train Toys through Toys R Us and the Internet site operated by Toys R Us (*http://www.toysrus.com*) during the period January 1, 2005 through June 13, 2007. On its Internet site, Toys R Us has announced RC2 Corp.'s recall of the Train Toys for failure to meet national safety standards.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and the Class Action Fairness Act of 2005. The matter in controversy in this class action exceeds $5,000,000, exclusive of interest and costs, and some members of the class are citizens of states other than the states in which Defendants are incorporated and have their principal place of business. In addition, pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state-law based claims. The Court also has personal jurisdiction over all of the Defendants because each of them is authorized to do business and has conducted business in this state.

17.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because one of the Defendants resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including the marketing, distribution and sale of the Train Toys.

## SUBSTANTIVE ALLEGATIONS

18.     On June 13, 2007, RC2 Corp. shocked parents and guardians of young children by announcing a recall of popular Train Toys that were sold in the United States for more than two and one-half years beginning in January 2005. The Company, in cooperation with the United States Consumer Product Safety Commission ("CPSC"), recalled the Train Toys because approximately 1.5 million of the toys were laden with lead paint, which is toxic if ingested by young children and can cause serious health problems such as learning disabilities, behavioral problems, stunted growth, slowed growth and impaired hearing. At high levels of exposure, children have died from lead poisoning. The CPSC has indicated that RC2 Corp.'s Chinese manufacturer used a high concentrate of lead pigments for portions of the paint on the tainted Train Toys.

19.     The recalled Train Toys were sold and distributed by defendant Wal-Mart, defendant Toys R Us and other toy stores and retailers nationwide during January 1, 2005 through June 13, 2007, when RC2 Corp. recalled the toys. RC2 provided little information regarding the recall, other

than that the toys were being recalled because their surface paints contained lead paint, which was purportedly discovered in a "routine quality check." In its recall notice, RC2 Corp. offered to exchange the toys, but has failed and refused to provide refunds for the Train Toys, which each range in price from $10 to as much as $70, and has further failed to offer to pay for any health-related problems associated with lead ingestion or contact. RC2 also acknowledged the dangers of exposure to lead paint, stating in the recall notice that lead is toxic if ingested by young children and can cause adverse health effects. RC2 advised consumers to take the Train Toys away from children "immediately"; however, RC2 Corp. did not offer to pay for costs incurred in shipping the tainted toys back to RC2 Corp.'s designated return distribution center in Iowa, or offer any alternative measures to return the tainted products to retailers such as Wal-Mart and Toys R Us.

20. The Train Toys are manufactured in China where RC2 Corp. has a compound of plants through which it manufactures its products in the RC2 Industrial Zone in Dongguan City, China. The recalled Train Toys all were designed and manufactured for use by pre-school-aged children and include the following product names:

- Red James Engine & Red James' #5 Coal Tender;

- Red Lights & Sounds James Engine & Red James' #5 Lights & Sounds Coal Tender;

- James with Team Colors Engine & James with Team Colors #5 Coal Tender;

- Red Skarloey Engine; Brown & Yellow Old Slow Coach;

- Red Hook & Ladder Truck & Red Water Tanker Truck;

- Red Musical Caboose;

- Red Sodor Line Caboose;

- Red Coal Car labeled "2006 Day Out with Thomas" on the Side;

- Red Baggage Car;

- 6 -

- Red Holiday Caboose;

- Red "Sodor Mail" Car;

- Red Fire Brigade Truck;

- Red Fire Brigade Train;

- Deluxe Sodor Fire Station;

- Red Coal Car;

- Yellow Box Car;

- Red Stop Sign;

- Yellow Railroad Crossing Sign;

- Yellow "Sodor Cargo Company" Cargo Piece;

- Smelting Yard; and

- Ice Cream Factory.

The recall includes approximately 1.5 million of these Train Toys.

21.    The Train Toys are favorite toys among young children and were favored by Plaintiff's children. Plaintiff was not aware that the Train Toys were contaminated with lead surface paint and would not have purchased the toys had he known that the toys would expose his children to toxic lead paint.

22.    RC2 Corp.'s recall of the Train Toys is only one example of the growing dangers of the China trade with the United States, which also has been exhibited recently in nationwide recalls of deadly-tainted pet food and toxic toothpaste. According to The New York Times, the number of products recalled in the United States by the CPSC has doubled in the last five years, and China is responsible for about 60 percent of all product recalls. The Toy Industry Association has indicated that at least 70 percent of all toys sold in the United States are manufactured in China, and 79

percent of all toys recalled in 2006 involved products manufactured in China. Goods exported from China to be sold in the United States exceeded $200 billion in 2006.

23. In addition to Thomas & Friends™ Wooden Railway Toys, RC2 Corp.'s licensing partners include Disney, Discovery and Nickelodeon, among others. Toys marketed by RC2 Corp. and Learning Curve are targeted for use by babies and young children who frequently put toys and objects in their mouths. In its financial filings, RC2 Corp. states that it licenses the popular brands to establish product authenticity, credibility and quality with consumers. The absence of quality-control measures and safety inspections by RC2 and Learning Curve and by Wal-Mart and Toys R Us who design, manufacture, market and/or distribute toys made in China unreasonably exposed thousands of young children to lead paint that can lead to serious, long-term health problems.

24. In 2003, RC2 Corp. previously recalled thousands of toys manufactured in China and marketed in the United States under the Lamaze infant brand because of lead-paint contamination. Thus, RC2 Corp. was aware that toys it manufactures in China and sells in the United States for use by young children should be inspected for toxic substances like lead paint prior to being mass distributed. But RC2 and Learning Curve obviously failed to implement adequate quality-control measures and safety inspections to protect consumers against such risks. Indeed, Defendants have offered no explanation regarding why the lead-paint-laden Train Toys went undetected for more than two years. Defendants clearly failed to monitor adequately the quality and safety of the Train Toys.

25. In its Annual Report on Form 10-K filed with the U.S. Securities and Exchange Commission, RC2 Corp. states that it is a leading designer, producer and marketer of high-quality toys. Notwithstanding that China-based product sourcing accounted for more than 90 percent of RC2 Corp.'s product purchases in 2006, RC2 Corp. represents in its Form 10-K that all of its "products are designed, manufactured, packaged, and labeled to conform with all safety

requirements under U.S. federal and other applicable laws and regulations . . . and are periodically reviewed and approved by independent safety testing laboratories."

26.     The Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. §1261(f)(1), defines household products that expose children to hazardous quantities of lead as "hazardous substances."

27.     Toys that are intended for use by children and that contain a hazardous substance in such manner to be susceptible to access to children are automatically banned under 15 U.S.C. §1261(q).

28.     Also, by regulation (16 C.F.R Part 1303) the CPSC has banned toys intended for use by children that contain certain levels of lead paint because of the risk of lead poisoning. Adverse effects of lead poisoning set forth in this regulation include a range of disorders, including hyperactivity, slowed learning ability, mental retardation, blindness, and death.

29.     In keeping with RC2 Corp.'s representations regarding safety and quality, Learning Curve markets its brand-name products (like the Train Toys) as safe and quality playthings. Contrary to these representations, the Train Toys were laden with hazardous lead paint during the manufacturing process and sold and marketed by Defendants to young children in violation of the FHSA for more than two years, without adequate inspection or quality-control measures. Every exposure to lead paint is cumulatively dangerous to children, and without early detection, children can suffer from brain and nerve damage, leading to serious, long-term health problems from lead poisoning.

30.     Plaintiff and other members of the Class were deceived by Defendants' quality-product and safety-control representations and were shocked to learn that their children's beloved Train Toys were contaminated with lead paint. Plaintiff's children actually ingested some of the surface paint of one of the tainted Train Toys. Clearly, Plaintiff and other members of the Class would not have purchased the Train Toys had they known of the hidden dangers and lead

contamination in the brightly-colored paint on the toys. In addition, the tainted Train Toys have operated among and rubbed against all other train toys and tracks for years in shared toy bins and play tables, and parents and other consumers have had no choice but to remove (at great expense) all of the Train Toys and other possibly-tainted toys and surfaces from their homes to prevent further dangerous lead-paint exposure to their children.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this nationwide class action individually and on behalf of others similarly situated as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff brings this action on behalf of himself and as father and next friend of minor children Beau Farish Murdock and Anabelle Sage Murdock, and all members of a proposed Class, consisting of all persons who during the period January 1, 2005 through June 13, 2007, purchased and/or were exposed to Thomas & Friends™ Wooden Railway Toys (the "Train Toys") that were manufactured and/or distributed by Defendants and were recalled due to lead poisoning hazards. Upon completion of discovery with respect to the scope of the Class, Plaintiff reserves the right to amend the class definition. Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, directors and officers, and members of their immediate families. Also excluded from the Class are the court, the Court's spouse, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.[1]

32. <u>Numerosity</u>: The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of members of the Class are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes and therefore avers that there are thousands of Class members

---

[1]    *See* Canon 3.C(3)(a) of the Code of Conduct for United States Judges.

throughout the United States. Indeed, Defendants distributed and sold over 1.5 million tainted Train Toys throughout the United States for more than a two-year period.

33. _Commonality_: There are questions of fact and law common to members of the Class that predominate over any questions affecting any individual members including, *inter alia*, the following:

(a)     Whether Defendants designed, manufactured, marketed and distributed toys that were recalled for lead paint contamination;

(b)     Whether Defendants advertised, represented or otherwise presented to the public toys that it manufactures, distributes and sells as safe and high quality;

(c)     Whether Defendants falsely represented or omitted information regarding the tainted Train Toys or their recall;

(d)     Whether Defendants engaged in unfair or deceptive trade practices;

(e)     Whether Defendants expressly warranted the Train Toys;

(f)     Whether Defendants purported to disclaim any express or implied warranties;

(g)     Whether Defendants intended for the Train Toys to be purchased by Plaintiff, Class members, or other consumers for use by young children;

(h)     Whether Defendants were negligent in manufacturing the Train Toys;

(i)     Whether Defendants were negligent in conducting quality control or safety inspections prior to distributing and selling the Train Toys for use by young children;

(j)     Whether using the Train Toys as intended – for playthings by young children – resulted in loss, injury, and/or damages to Plaintiff and to the Class members;

(k)     Whether Defendants' wrongful conduct proximately caused injury, loss or damages;

(l)     Whether exposure to the tainted Train Toys created an increased risk of serious health problems in young children; and

(m)     Whether an increased risk of serious health problems in young children mandates periodic medical examination for early detection of potential health problems related to lead paint poisoning.

34.     Typicality:  Plaintiff's claims are typical of the claims of the other members of the Class in that Plaintiff is a parent who purchased from Defendants the Train Toys to which his children have been exposed.  Defendants each and all failed to inspect for and disclose hazardous risks associated with the Train Toys and deprived Plaintiff and other members of the Class from making informed decisions prior to purchasing the tainted toys for which Defendants have offered no refunds.  Further, Plaintiff's claims are typical of the other members of the Class because Plaintiff seeks equitable injunctive relief of court-ordered medical monitoring funded by Defendants to assist Plaintiff and the Class members and their children who all suffer an increased risk of harm from lead poisoning for which medical monitoring relief is appropriate.  Plaintiff and his children, and the Class as a whole will benefit from such relief as monitoring the health of children exposed to the tainted Train Toys can detect health problems caused by the lead paint exposure and prevent further injury.  Plaintiff also seeks monetary damages for, among other things, the cost of purchasing the Train Toys.

35.     Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other members of the Class.  Plaintiff is willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiff has retained competent counsel experienced in litigation of this nature.

36.     Plaintiff brings this action under Rule 23(b)(2) because defendant has acted on grounds generally applicable to the Class thereby making appropriate final injunctive relief to the

- 12 -

Class as a whole and plaintiff is seeking injunctive and other equitable relief in the form of medical monitoring and 23(b)(3) because common questions of law and fact (identified in paragraph 33 above) predominate over questions of law and fact affecting individual members of the Class. Indeed, the predominant issue in this action is whether Defendants' Train Toys products are defective and have caused damages to Plaintiff and Plaintiff's children and the members of the Class. In addition, the expense of litigating each Class member's claim individually would be so cost prohibitive as to deny Class members a viable remedy. Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiff envisions no unusual difficulty in the management of this action as a class action.

37.     Certification of the Class is also appropriate, and the management of this action as a Class Action will not be difficult and will eliminate the risk of incompatible standards of conduct for Defendants and inconsistent or varying adjudications for all parties.

38.     The undersigned counsel for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis. Undersigned counsel will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

39.     Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

## COUNT I

### Negligence
### (Against All Defendants)

40.     Plaintiff repeats and alleges the allegations contained above as if fully set forth herein.

41.     Defendants designed, manufactured, sold and/or distributed Train Toys to parents, guardians and other consumers of children's toys.

42.     Defendants owed Plaintiff and other members of the Class a duty to offer safe, non-hazardous toys, including a duty to exercise reasonable care to assure that the Train Toys did not contain banned hazardous substances such as lead paint.

43.     Through their failure to exercise due care, Defendants breached this duty by designing, manufacturing, selling and/or distributing the Train Toys in a defective condition that was unsafe for children and exposed them to lead, which is a banned hazardous substance.

44.     Defendants also breached their duty of care to Plaintiff and other members of the Class by failing to use sufficient safety inspections and quality-control measures; failing to use proper manufacturing, production and processing; and failing to take sufficient measures to prevent the Train Toys from being offered for sale to parents, guardians and other gift-givers of children.

45.     Defendants knew or, in the exercise of reasonable care, should have known that the Train Toys presented an unacceptable risk to children of Plaintiff and other members of the Class and would result in damage that was foreseeable and reasonably avoidable.

46.     As a direct and proximate result of Defendants' negligence, Plaintiff and other members of the Class have suffered loss and damages.

## COUNT II

### Breach of Implied Warranty
### (Against All Defendants)

47.     Plaintiff repeats and alleges the allegations contained in ¶¶1-39 above as if fully set forth herein.

48.     Defendants designed, manufactured, sold and/or distributed Train Toys to parents, guardians and other consumers of children's toys.

49.     At the time that Defendants designed, manufactured, sold and/or distributed Train Toys, Defendants knew the purpose for which the Train Toys were intended and impliedly warranted that the Train Toys were of merchantable quality; were free of hazardous substances; were free of manufacturing defects such as lead contamination; and were safe and fit for their ordinary purpose – play toys for young children.

50.     Plaintiff and other members of the Class relied upon the skill, superior knowledge and judgment of the Defendants to sell toys that were reasonably safe for use by young children. Plaintiff could not have known about the risks associated with the Train Toys until after Defendants issued a public notice recalling the Train Toys announcing that the toys were not safe or fit for their ordinary purpose and intended use and were not free of manufacturing defects, but instead were laden with lead paint, which is a banned hazardous substance because of its extreme danger to young children.

51.     Defendants breached their implied warranties in connection with the sale of the Train Toys to Plaintiff and other members of the Class.

52.     As a direct and proximate result of Defendants breach of implied warranties, Plaintiff and other members of the Class have suffered damages, including, but not limited to, an increased risk of serious health problems.

- 15 -

## COUNT III

### Breach of Express Warranty
### (Against All Defendants)

53.     Plaintiff repeats and alleges the allegations contained in ¶¶1-39 above as if fully set forth herein.

54.     Defendants designed, manufactured, sold and/or distributed Train Toys to parents, guardians and other consumers of children's toys.

55.     At the time that Defendants designed, manufactured, sold and/or distributed Train Toys, Defendants knew the purpose for which the Train Toys were intended and expressly warranted that the Train Toys were safe and fit for use as play toys by young children.

56.     Plaintiff and other members of the Class relied upon the skill, superior knowledge and judgment of the Defendants to sell toys that were reasonably safe for use by young children. Plaintiff could not have known about the risks associated with the Train Toys until after Defendants issued a public notice recalling the Train Toys announcing that the toys were not safe or fit for their ordinary purpose and intended use and were not free of manufacturing defects, but instead were laden with lead paint, which is a banned hazardous substance because of its extreme danger to young children.

57.     Defendants breached their express warranties in connection with the sale of the Train Toys to Plaintiff and other members of the Class.

58.     As a direct and proximate result of Defendants breach of express warranties, Plaintiff and other members of the Class have suffered damages, including, but not limited to, an increased risk of serious health problems.

- 16 -

## COUNT IV

### Negligence and Breach of Express and Implied Warranties
### for Purposes of Establishing Medical Monitoring
### (Against All Defendants)

59.     Plaintiff repeats and alleges the allegations contained in ¶¶1-39 above as if fully set forth herein.

60.     Defendants designed, manufactured, sold and/or distributed Train Toys to parents, guardians and other consumers of children's toys.

61.     At the time that Defendants designed, manufactured, sold and/or distributed Train Toys, Defendants knew the purpose for which the Train Toys were intended and impliedly and expressly warranted that the Train Toys were safe and fit for use as play toys by young children.

62.     Defendants owed Plaintiff and other members of the Class a duty to offer safe, non-hazardous toys, including a duty to exercise reasonable care to assure that the Train Toys did not contain banned hazardous substances such as lead paint.

63.     Through their failure to exercise due care, Defendants breached this duty by designing, manufacturing, selling and/or distributing the Train Toys in a defective condition that was unsafe for children and exposed them to lead, which is a banned hazardous substance.

64.     Defendants also breached their duty of care to Plaintiff and other members of the Class and breached their warranties by failing to use sufficient safety inspections and quality-control measures; failing to use proper manufacturing, production and processing; and failing to take sufficient measures to prevent the Train Toys from being offered for sale to parents, guardians and other gift-givers of children.

65.     Defendants knew or, in the exercise of reasonable care, should have known that the Train Toys presented an unacceptable risk to children of Plaintiff and other members of the Class and would result in damage that was foreseeable and reasonably avoidable.

66.     Plaintiff and other members of the Class relied upon the skill, superior knowledge and judgment of the Defendants to sell toys that were reasonably safe for use by young children. Plaintiff could not have known about the risks associated with the Train Toys until after Defendants issued a public notice recalling the Train Toys announcing that the toys were not safe or fit for their ordinary purpose and intended use and were not free of manufacturing defects, but instead were laden with lead paint, which is a banned hazardous substance because of its extreme danger to young children.

67.     Defendants breached their implied and express warranties in connection with the sale of the Train Toys to Plaintiff and other members of the Class.

68.     As a direct and proximate result of Defendants' breach of duty and express and implied warranties, Plaintiff and other members of the Class have suffered damages, including, but not limited to, an increased risk of serious health problems for which periodic medical examination are reasonable and necessary.  Medical monitoring is, to a reasonable degree of medical certainty, necessary to detect and diagnose the warning signs of disease and other serious health concerns such as brain and nerve damage, leading to serious, long-term health problems from lead poisoning.

69.     Defendants should be required to establish and fund a medical monitoring program to pay for the monitoring of all children of Plaintiff and all other members of the Class who were exposed to the Train Toys, and further should be required to notify all members of the Class that children exposed to the Train Toys require periodic medical testing for lead poisoning.

70.     Plaintiff and other members of the Class have no adequate remedy at law for which monetary damages alone can compensate them for the risk of physical harm due to the exposure of their children to lead paint on the Train Toys.  Without a Court-ordered and supervised medical monitoring program funded by Defendants, Plaintiff and other members of the Class will continue to face serious health problems.

## COUNT V

### Strict Products Liability for Purposes of Establishing Medical Monitoring
### (Against All Defendants)

71.     Plaintiff repeats and alleges the allegations contained in ¶¶1-39 above as if fully set forth herein.

72.     Defendants designed, manufactured, sold and/or distributed Train Toys to parents, guardians and other consumers of children's toys.

73.     The Train Toys Defendants designed, manufactured, sold and/or distributed were defective in design or manufacturing, and were defective when they left the control of the Defendants such that the foreseeable risks exceeded the benefits associated with the design or manufacturing, or such that they were unreasonably dangerous, more dangerous than an ordinary consumer would expect, and more dangerous than other toys.

74.     Defendants' Train Toys were expected to and did reach Plaintiff and other members of the Class without substantial change in condition.

75.     The Train Toys Defendants designed, manufactured, sold and/or distributed were defective due to inadequate warning and inadequate inspection and testing, and inadequate reporting regarding the results of quality-control testing and safety inspections, or lack thereof.

76.     As a direct and proximate result of the defective condition of the Train toys as designed, manufactured, sold and/or distributed by Defendants, Plaintiff and other members of the Class have suffered damages, including, but not limited to, an increased risk of serious health problems for which periodic medical examinations are reasonable and necessary.

## COUNT VI

### Violation of the Consumer Product Safety Act (15 U.S.C. §2072) & Consumer Product Safety Rules (15 U.S.C. §1261, 16 C.F.R. §1303) (Against All Defendants)

77.     Plaintiff repeats and alleges the allegations contained in ¶¶1-39 above as if fully set forth herein.

78.     §2072 of the Consumer Product Safety Act provides as follows:

(a) Persons injured; costs; amount in controversy.  Any person who shall sustain injury *by reason of any knowing (including willful) violation of a consumer product safety rule*, or any other rule or order issued by the Commission may sue any person who knowingly (including willfully) violated any such rule or order in any district court of the United States in the district in which the defendant resides or is found or has an agent, shall recover damages sustained, and may, if the court determines it to be in the interest of justice, recover the costs of suit, including reasonable attorneys' fees (determined in accordance with section 11(f) [15 U.S.C.A. §2060(f)]) and reasonable expert witnesses' fees; Provided, That the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, unless such action is brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

\* \* \*

(c) Remedies available.  The remedies provided for in this section shall be in addition to and not in lieu of any other remedies provided by common law or under Federal or State law.

79.     Through Consumer Product Safety rules, the CPSC has banned as hazardous the manufacture, sale and distribution of lead-containing paint and toys that contain high levels of lead paint (15 U.S.C. §1261 and 16 C.F.R. §1303).

80.     The Train Toys contained banned hazardous substances and unlawfully exposed children to hazardous quantities of lead in violation of Consumer Product Safety rules.

81.     Defendants knowingly violated Consumer Product Safety rules, including, but not limited to, 15 U.S.C. §1261 and 16 C.F.R. §1303, and thus violated §2072(a) of the Consumer Product Safety Act.  Defendants failed to exercise due care to ascertain the safety and quality in the manufacturing of the Train Toys before they marketed, sold and distributed them as safe and quality

play toys for young children, and failed to institute quality-control measures and to inspect with due care the Train Toys and their surface paint.

82.     Plaintiff and other members of the Class reasonably relied upon Defendants' representations that the Train Toys were safe for play toys used by young children.

83.     Plaintiff and other members of the Class were deceived by Defendants' representations that the Train Toys were safe and quality toys, when instead the toys were hazardous and exposed children who played with them to lead.  Plaintiff and other Class members would not have purchased the Train Toys had they known that the surface paints of these toys contained lead.

84.     As a direct and proximate result of Defendants' unlawful conduct and practices, Plaintiff and members of the Class, have suffered an increased risk of serious health problems and have paid for products that are unsuitable for any use.

## COUNT VII

**Violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§56:8, *et seq.*,
and Similar Consumer Protections Statutes of Other States
(Against All Defendants)**

85.     Plaintiff repeats and alleges the allegations contained in ¶¶1-39 and 77-84 above as if fully set forth herein.

86.     The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§56:8-1, *et seq.*, ("NJCFA") protects consumers against fraud, unlawful practices, and unconscionable commercial practices in connection with the sale of any merchandise.

87.     Defendants' sold and falsely marketed the Train Toys as safe and quality products, when in fact the toys were laden in lead paint, which is a banned hazardous substance, and constitutes a violation of the New Jersey Consumer Fraud Act, as well as other similar statutes, including, but not limited to: the Illinois Consumer Fraud and Deceptive Business Practices Act, 815

- 21 -

ILCS 505/1-12; the Arkansas Deceptive Trade Practices Act, AR St. § 4-88-101, *et seq.*; and the California Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*.

88.     Plaintiff and other members of the Class reasonably relied upon Defendants' representations that the Train Toys were safe for play toys used by young children.

89.     Plaintiff and other members of the Class were deceived by Defendants' representations that the Train Toys were safe and quality toys, when instead the toys were hazardous and exposed children who played with them to hazardous lead. Plaintiff and other Class members would not have purchased the Train Toys had they know that the surface paints of these toys contained lead.

90.     Defendants' conduct constitutes a per se violation of NJCFA because it constitutes a violation of the Consumer Product Safety Commission and, thus, is an unconscionable commercial practice.

91.     As a direct and proximate result of Defendants' misrepresentations and unlawful and unconscionable commercial practices, Plaintiff and members of the Class, have suffered an increased risk of serious health problems and have paid for products that are unsuitable for any use.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendants as follows:

A.     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate sub-classes, and appointing Plaintiff and his legal counsel to represent the Class;

B.     Awarding actual, compensatory and consequential damages, including an amount to fund reasonable costs of medical monitoring for the Class;

C.     Awarding punitive and treble damages as provided under relevant laws;

D.     Granting equitable and injunctive relief to establish a medical-monitoring program;

- 22 -

E.   Awarding costs, including experts' fees, and attorneys' fees and expenses and the costs of prosecuting this action; and

F.   Granting such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff and the Class demand a jury trial on all issues triable by a jury.

DATED:  July 20, 2007

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**

By: _____
Peter S. Pearlman, Esq.
Park 80 Plaza West-One,
Saddle Brook, NJ 07663
Telephone: 201/845-9600
201/845-9423 (fax)
**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**
Jack Reise
Stuart A. Davidson
James L. Davidson
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432-4809
Tel: 561.750.3000
Fax: 561.750.3364

**GULAS & STUCKEY, P.C.**
Jason A. Stuckey
Lauren Wagner Pederson (of counsel)
2031 2nd Avenue North
Birmingham, AL 35203
Tel: 205.879.1234
Fax: 205.879.1247

Attorneys for Plaintiff and the Class

G:\sdavidson\Learning Curve\Cpt - FINAL.doc