## BEFORE THE JUDICAL PANEL ON
## MULTIDISTRICT LITGTION

In Re Thomas Trains Paint Litigation                    MDL-_____

## JOINT MEMORANDUM OF LAW IN SUPPORT OF
## CERTAIN PLAINTIFFS' MOTION FOR TRANSFER AND
## COORDINATION PURSUANT TO 28 U.S.C §1407

### I.    INTRODUCTION

Plaintiffs Chad J. Sweeney, Gregg Theobald, Shay Theobald, Robert Miller,

Rachel Miller, Channing Hesse, Kimm Walton, John O'Leary, Christine Waller, Paul

Djurisic, Rebekah Lockhart, Theresa Reddell, Christa Marie Stratton, James Weldon

Stratton, Christopher Brady, Tom Brady, Austin Rohde, Nicholas Rohde, Robyne Rohde,

Caryn Hudspeth, Patrick Hudspeth, Claudine M. Kreiner, Ryan R. Kreiner, Cherise

Wilson, Aive Rei-Ghafoor, Tonya Tubbs, Thomas Toms, Tracy Hofmann, Sheree

Argiris, Cheng Yin, and C. Kelly [1] seek transfer of five class action lawsuits, now

pending in five separate federal districts, to the Northern District of Illinois where nine

actions are already pending for coordinated or consolidated pretrial proceedings under 28

---

[1]     This joint motion is filed on behalf of plaintiffs in the following actions: 1) *Walton v. RC2 Corporation, et al.*, Docket No. 07CV3614 (N.D. Ill.); 2) *Sweeney et al. v. RC2 Corp. et al.*, Civil Action No. 1:07-cv-00772 (S.D. Ind.); 3) *Hesse, et al. v. Learning Curve Brands, Inc. et al.*, Civil Action No. 1:07-cv-03451 (N.D. Ill.); 4) *O'Leary, et at. v. Learning Curve Brands, Inc.*, Civil Action No. 1:07-cv-03682, (N.D. Ill.); 5) *Djurisic, et al. v. Apax Partners, Inc. et al*, Civil Action No.1:07-cv-03707, (N.D. Ill.); 6) *Reddell, et al. v. Learning Curve Brands, Inc. et al.*, Civil Action No. 1:07-cv-03747, (N.D. Ill.); 7) *Stratton et al. v. RC2 Corp. et al.*, Civil Action No. 4:07-cv-00640 (E.D. Ark.); 8) *Rohde et al. v. Learning Curve Brands, Inc. et al.*, Civil Action No. 1:07-cv-04187 (N.D. Ill.); and 9) *Kelly v. RC2 Corporation*, Civil No. 07- cv-02525 (E.D.N.Y). The foregoing Northern District of Illinois actions have been coordinated and assigned to a single judge, Judge Leinenweber. Two additional actions, *Kreiner et al. v. RC2 Corp. et al.*, Civil Action No. 1:07-cv-04547 (N.D. Ill.); and *Wilson v. RC2 Corp. et al.*, Civil No. 07-cv-0642 (N.D. Ill.) have since been filed and a motion is pending to also reassign those cases to Judge Leinenweber.

U.S.C. § 1407. Plaintiffs in the New York, Arkansas and Indiana actions agree to the proposed transfer to the Northern District of Illinois. These actions raise common questions of fact and make common allegations of negligence, breach of warranty, consumer fraud and related common law claims arising from the manufacturing and distribution of children's toys that contain lead in the surface paint.

Transfer of these actions for coordinated or consolidated pretrial proceedings will serve the convenience of the parties and witnesses, promote the just and efficient conduct of the litigation, and avoid inconsistent rulings on critical pretrial matters. Defendant RC2 Corporation ("RC2") designed, manufactured and marketed the children's toys and is headquartered in Oakbrook, Illinois. Nine class actions are already filed in the Northern District of Illinois and that district is easily accessible by all parties and counsel. Coordination or consolidation of discovery in one court is necessary to avoid duplicative discovery. Additionally, transfer will facilitate meaningful non-conflicting participation in the litigation by all parties.

## II. <u>FACTS</u>

**A.    Background**

Defendants RC2 and Learning Curve Brands, Inc., its wholly owned subsidiary, are self-described leading designers, producers and marketers of innovative, high-quality toys, collectibles and juvenile products, with corporate headquarters in Oak Brook, Illinois. The companies sell children's products through more than 25,000 retail outlets located primarily in North America, Europe, and Asia Pacific. Defendants marketed and advertised Thomas & Friends™ Wooden Railway Toys ("Thomas Trains") throughout the nation and in the state of Illinois as being safe for children. Thomas Trains were sold

in toy stores, department stores and specialty shops throughout the nation and the state of Illinois.

On or about June 13, 2007, after determining that the surface paints on certain of its railway toys contain lead, RC2 issued a recall of various Thomas Trains including a warning to parents and consumers that lead is toxic if ingested by young children and can cause adverse health effects (the "June 13 Recall"). The original recall was limited to various Thomas Trains sold at toy stores and various retailers nationwide from January 2005 though June 2007. The U.S. Consumer Product Safety Commission estimated on June 13, 2007, that approximately 1.5 million Thomas Trains are subject of the recall.

Plaintiffs assert their claims against RC2 and other defendants as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased and/or paid for various Thomas Trains included in RC2's June 13 Recall.

The pending cases all arise out of defendants' design, manufacture, market and distribution of Thomas Trains containing surface paint with lead, a toxic substance, which if ingested by young children, can cause adverse health effects. Plaintiffs all allege they would not have purchased these toys for their young children had they known about their dangerous and life-threatening propensities. In varying forms, all named plaintiffs also assert that the Thomas Trains marketed as safe for young children were made using surface paint containing lead which may cause a range of serious health effects to children including behavioral problems, seizures, stunted growth, and even death from lead poisoning, and, as a result, the Defendants' actions constitute negligence, breach of warranty, consumer fraud and other illegal acts.

3

The defendants' actions have injured Plaintiffs and other Class members, who seek relief, including medical monitoring on behalf of all children of Class members, to assure the early diagnosis and treatment of those children exposed to the lead paint on the recalled toys and monetary damages, including but not limited to, a full refund of all costs associated with the purchase of the Thomas Trains.

## B.    The Thomas Trains Class Actions

Following the June 13 Recall, at least fourteen class action complaints were filed against RC2 and other defendants. These lawsuits assert claims for injuries arising from defendants' research, design, development, manufacture, production, marketing and/or distribution of toys containing surface paint with lead.

- *Sweeney et al. v. RC2 Corp. et al.*, Civil Action No. 1:07-cv-00772 (S.D. Ind.)

- *Hesse, et al. v. Learning Curve Brands, Inc. et al.*, Civil Action No. 1:07-cv-03451 (N.D. Ill.)

- *Kelly, et al. v. RC2, Corp.*, Civil Action No. 1:07-cv-02525, (E.D. N.Y.)

- *Deke, et al. v. RC2 Corp. et al.*, Civil Action No. 1:07-cv-03609 (N.D. Ill.)

- *Walton, et al. v. RC2 Corp. et al.*, Civil Action No. 1:07-cv-03614 (N.D. Ill.)

- *O'Leary, et at. v. Learning Curve Brands, Inc.*, Civil Action No. 1:07-cv-03682, (N.D. Ill.)

- *Djurisic, et al. v. Apax Partners, Inc. et al*, Civil Action No.1:07-cv-03707, (N.D. Ill.)

- *Reddell, et al. v. Learning Curve Brands, Inc. et al.*, Civil Action No. 1:07-cv-03747, (N.D. Ill.)

- *Stratton et al. v. RC2 Corp. et al.*, Civil Action No. 4:07-cv-00640 (E.D. Ark.)

- *Murdock v. RC2 Corp. et al.*, Civil Action No. 2:07-cv-03376 (U.S.D.C. N.J.)
- *Rohde et al. v. Learning Curve Brands, Inc. et al.*, Civil Action No. 1:07-cv-04187 (N.D. Ill.)
- *Kreiner et al. v. RC2 Corp. et al.*, Civil Action No. 1:07-cv-04547 (N.D. Ill.)
- *Wilson v. RC2 Corp. et al.,* Civil No. 07-cv-0642 (N.D. Ill.)
- *Martinez v. RC2 Corp.*, Civil No. 07-cv-5401-AHM (C.D. Ca.)

These cases seek to recover damages on behalf of all persons who purchased and/or paid for various Thomas Trains included in RC2's June 13 Recall. Submitted herewith is a Schedule of Actions involved under 28 U.S.C. §1407 that lists the actions to be transferred and coordinated.

Plaintiffs seek to have the class actions pending in district courts outside of the Northern District of Illinois transferred to the Northern District of Illinois for centralization and coordination with the seven class actions already pending in that jurisdiction which have been reassigned by order dated July 19, 2007 and are all pending before the Honorable Harry D. Leinenweber.[2] Transfer and coordination is appropriate because these cases involve common factual questions, transfer will further the convenience of the parties and the witnesses, and transfer will promote the just and efficient conduct of these actions.

The Northern District of Illinois is the appropriate place for transfer and coordination because the District has the resources and judicial expertise to properly conduct this case; the Thomas Trains were researched, designed, developed,

---

[2]   The last two cases filed, *Kreiner et al. v. RC2 Corp. et al.*, Civil Action No. 1:07-cv-04547 (N.D. Ill.); and *Wilson v. RC2 Corp. et al.,* Civil No. 07-cv-0642 (N.D. Ill.), have not yet been reassigned and are the subject of a pending motion for reassignment to Judge Leinenweber.

manufactured, produced, marketed and/or distributed by RC2, which is headquartered in

Oak Brook, Illinois, other defendants transact business in that district, nine class actions

are already filed there; and the Northern District of Illinois is easily accessible by all

parties and counsel.

### III.    ARGUMENT

### A.    Transfer and Coordination of All Actions for Coordinated Pretrial Proceedings Is Appropriate

28 U.S.C. §1407 authorizes this Panel to transfer two or more civil cases for

coordinated pretrial proceedings upon a determination that: (i) they "involv[e] one or

more common questions of fact," (ii) transfer will further "the convenience of parties and

witnesses," and (iii) transfer "will promote the just and efficient conduct of the actions."

The requirements for transfer under Section 1407 are clearly satisfied here.

The Thomas Trains class actions are characterized almost entirely by common

questions of fact.  In addition, transfer and coordination will promote convenience for the

parties and efficiency in the pretrial proceedings by eliminating duplicative discovery and

the potential for inconsistent rulings, including determinations on class certification.

### 1.    The Related Actions Involve Common Questions of Fact

The first requirement of Section 1407 – that the actions to be transferred involve

common questions of fact – is satisfied.  The factual issues to be determined in each of

the actions proposed for transfer and coordination arise from the same course of conduct.

*See In re Aimster Copyright Litigation*, 177 F.Supp.2d 1380, 1382 (Jud.Pan.Mult.Lit.

2001); *In re Sulfuric Acid Antitrust Litigation,* 270 F.Supp.2d 1379, 1380

(Jud.Pan.Mult.Lit. 2003) (important test for transfer under 28 U.S.C. § 1407 is presence

of common questions of fact).

Among many common questions of law and fact at issue in the related actions are:

a.      Whether defendants are strictly liable for the design, manufacture and/or marketing of dangerously defective products;

b.      Whether defendants negligently designed, manufactured, labeled and/or marketed the relevant products;

c.      Whether Class members' children who have handled, chewed on, and/or otherwise been exposed to Thomas Trains suffered adverse health effects, reactions or diseases caused by exposure to those products;

d.      Whether Class members' children's increased risk of sustaining adverse health effects or other injury makes periodic diagnostic and medical examinations (medical monitoring) effective and reasonably necessary;

e.      Whether defendants conducted, either directly or indirectly, appropriate research and testing of the relevant products to determine whether lead was contained in the surface paint on the Thomas Trains;

f.      Whether defendants breached express and/or implied warranties covering the Thomas Trains;

g.      Whether defendants were unjustly enriched at the expense of plaintiffs and the Class;

h.      Whether the equitable, injunctive and declaratory relief should be granted;

i.      Whether defendants' acts or omissions in connection with the sale of the relevant products constitute unfair and/or deceptive acts and practices within the

meaning of the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS section 505/1, *et seq.* and similar consumer fraud laws of other states;

          j.      Whether the Class has been injured by virtue of defendants' violations of 815 ILCS section 505/1, *et seq.*;

          k.      Whether defendants supervised and directed the manufacturing process of the recalled toys in the Peoples Republic of China;

          l.      Whether defendants had prior knowledge regarding the lead used in the recalled toys and how long they had possessed that knowledge; and

          m.      What representations were made by the defendants regarding the safety of the recalled toys.

## 2.    Coordinating the Class Actions Will Further the Convenience of the Parties and the Witnesses

Coordinating the class actions will meet the second requirement under Section 1407 because it will serve the convenience of the parties and witnesses. Convenience of the parties and witnesses, avoidance of duplication of discovery, and elimination of the possibility of conflicting or inconsistent pretrial rulings on common issues are key objectives of 28 U.S.C. §1407. *In re JP Morgan Chase & Co. Securities Litigation* 452 F.Supp.2d 1350, 1351 (Jud.Pan.Mult.Lit. 2006).[3]

---

[3]     *See also In re Sulfuric Acid Antitrust Litigation, supra* (Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings [especially with respect to class certification matters], and conserve the resources of the parties, their counsel and the judiciary); *In re "Factor VIII or IX Concentrate Blood Products", Product Liability Litigation*, 853 F.Supp. 454, 455 - 456 (Jud.Pan.Mult.Lit. 1993); *In re Wireless Telephone 911 Calls Litigation*, 259 F.Supp.2d 1372, 1373 -1374 (Jud.Pan.Mult.Lit. 2003); *In re Air Crash Near Athens, Greece*, 435 F.Supp.2d 1340, 1341 -1342 (Jud.Pan.Mult.Lit. 2006).

Where, as here, the pending cases, Defendants' offices, and all parties' counsel are diversely located geographically, consolidation of these cases in a centrally located, convenient location serves the convenience of all of the parties involved.  See, *In re Regents of the University of California,* 964 F.2d 1128, 1136 (1992);  *In re Wireless Telephone 911 Calls Litigation, supra*;  *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation*, 314 F.Supp.2d 1376, 1377 -1379 (Jud.Pan.Mult.Lit. 2004)

The various actions, individually or in the aggregate, raise identical issues regarding the manufacturing of at least 1.5 million children's toys, sold nationwide since January 2005.  These toys were designed for toddlers, who can be expected to lick, suck, bite, chip and ingest the poisonous lead paint.  Despite clear regulatory prohibitions on the use of lead paint on toys, and having the knowledge that the ingestion of lead paint by children can cause serious long-term injury, Defendants still represented that the toys were safe for children.  As a result of Defendants' conduct, Plaintiffs' children have been significantly exposed to a known hazardous substance.  As a result of such exposure, the children are at an increased risk of numerous adverse health effects and even death. Plaintiffs and members of the Class have lost significant sums of money by purchasing these toys, which are no longer useable.

It is expected that counsel for Plaintiffs in all actions will seek documents from the same defendants on such issues as, *inter alia*: (a) where the recalled Thomas Trains were manufactured; (b) the manufacturing and design processes for the recalled Thomas Trains; (c) the procedures, if any, regarding periodic review and testing of the toys manufactured, packaged and labeled by RC2 and the other defendants;  (d) the identity of any independent safety testing laboratories hired by defendants to ensure the safety of the

9

recalled toys; (e) the composition and character of the lead contained in the ssurface paint of the Thomas Trains; and (f) when Defendants learned or should have learned that the recalled Thomas Trains contained toxic surface paint with lead.  Issues such as these will be central in all of the class actions.

Because the actions arise from a common core of factual allegations, there is a strong likelihood of duplicative discovery demands and redundant depositions. Coordination of pretrial proceedings will enable a single judge to establish a pretrial program that will minimize the inconvenience to the witnesses and expenses to the parties.  These savings are precisely the types of savings that this Panel has traditionally used to justify the coordination of pretrial proceedings in different jurisdictions.  *See, e.g., Neurontin*, 342 F. Supp. 2d at 1351; *Columbia Univ. Patent Litig.*, 313 F. Supp. 2d at 1385.

### 3.    Transfer and Coordination Will Promote the Just and Efficient Conduct of the Related Actions

Finally, transferring and coordinating these class actions is appropriate because coordinating the pretrial proceedings will promote the just and efficient conduct of the actions.  In light of the nearly identical factual allegations, and especially given that discovery has not yet begun in any action, transfer under Section 1407 will avoid duplicative discovery and save judicial time and resources.  *See e.g. In re Aimster Copyright Litigation, supra,*  177 F.Supp.2d 1380 at 1382  (ordering cases transferred to a single district to "eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary"); *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litigation, supra,* 408 F.Supp.2d at 1355.

The plaintiffs in each action will seek to depose many of the same individuals from RC2 and its various affiliates and request production of a substantially similar set of documents. Failing to coordinate pretrial proceedings in these actions will therefore result in duplicative discovery efforts, requiring witnesses to appear for multiple depositions and defendants to produce several sets of the same documents. The coordination of these actions would avoid the inconvenience and needless waste of resources.

Moreover, the corresponding savings in time and expense would confer benefits upon both the plaintiffs and defendants. *See In re McDonald's French Fries Litigation supra,* 444 F.Supp.2d at 1343 (centralization necessary to conserve the resources of the parties, their counsel and the judiciary); *In re Aimster Copyright Litigation, supra,* 177 F.Supp.2d at 1382; *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litigation, supra,* 408 F.Supp.2d at 1355; *In re Sulfuric Acid Antitrust Litigation, supra,* 270 F.Supp.2d at 1330; *In re JP Morgan Chase & Co. Securities Litigation, supra,* 452 F.Supp.2d at 1351.

Finally, transfer of the actions is appropriate to reduce the possibility of inconsistent pretrial rulings. *See In re Aimster Copyright Litigation, supra, In re Ameriquest Mortg. Co. Mortg. Lending Practices Litigation, supra.; In re McDonald's French Fries Litigation supra.* The Panel has consistently held that when the risk of overlapping pretrial determinations exists, transfer of actions to a single district for consolidation or coordination of pretrial proceedings is necessary in order to eliminate the possibility of inconsistent pretrial rulings. *See e.g. In re McDonald's French Fries*

*Litigation, supra,* 444 F.Supp.2d at 1343 (centralization necessary to prevent inconsistent pretrial rulings particularly with respect to the issue of class certification).

Where, as here, coordination will avoid duplicative discovery and potentially conflicting pretrial rulings, transfer for pretrial purposes is warranted to promote the interests of judicial economy and efficiency.

**B.    The Northern District of Illinois Is the Proper Forum for Coordinated Pretrial Proceedings**

**1.    The Northern District of Illinois Has the Resources and Judicial Expertise to Properly Conduct this Case**

"The basic purpose of assigning (multiple litigation) to a single judge is to provide for uninterrupted judicial supervision and careful consistent planning and conduct of pretrial and trial proceedings that will eliminate or reduce conflict and duplication of effort." *In re Multidistrict Private Civil Treble Damage Litigation Involving Library Editions of Children's Books,* 297 F. Supp. 385 (J.P.M.L. 1968) (quoting Manual for Complex and Multidistrict Litigation, p. 10 (1968)). In selecting the most appropriate transferee forum for multidistrict litigation, the Panel considers, among other things, resources and judicial expertise.

The Northern District of Illinois has extensive experience in managing multidistrict litigation. It has an established track record of managing complex class action litigation. Indeed, the Panel has specifically recognized that the Northern District of Illinois is equipped with the resources necessary to manage complex multidistrict litigation. *See, e.g., In re Sulfuric Acid Antitrust Litigation supra,* 270 F.Supp.2d at 1380 (in transferring litigation to Northern District of Illinois, Panel noted that the

District "is equipped with the resources that this complex antitrust docket is likely to require.")

**2.    The Northern District of Illinois Is Where Many of the Documents and Witnesses Will Be Located Since RC2 Is Headquartered In the District**

The convenience of the parties and witnesses is a factor in determining to which district related actions should be transferred. 28 U.S.C. §1407(a) (related actions may be transferred to a district for coordinated proceedings upon a determination that the transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions"). In deciding whether a particular forum is convenient, the Panel may consider the location of the parties, documents and potential witnesses relative to that district. This factor weighs heavily in favor of the Northern District of Illinois.

RC2 and Learning Curve Brands Inc. are headquartered in Oak Brook, Illinois, where the Thomas Trains were researched, designed, developed, manufactured, produced, marketed and/or distributed. Many of the witnesses and documents will be located in Oak Brook – favoring selection of the Northern District of Illinois over any other courts proposed. *See  In re McDonald's French Fries Litigation, supra,* 444 F.Supp.2d  at1343 (litigation transferred to Northern District of Illinois ["NDI"]where it is a likely source of relevant documents and witnesses, inasmuch as McDonald's headquarters is located there); *In re Air Crash Near Athens, Greece, supra,* 435 F.Supp.2d at 1342  (transfer to NDI where relevant discovery may be found within this district, since Boeing is headquartered there); *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litigation, supra,* 408 F.Supp.2d at 1355 (transfer to NDI because

"this geographically central district will be a convenient location for a litigation already nationwide in scope.")

### 3.   The Majority of the Related Cases Were Filed in the Northern District of Illinois

Transfer to the Northern District of Illinois also is appropriate because nine of the 14 related actions were filed there.  Where a majority of related actions are pending also is relevant in selecting an appropriate forum.  *See In re Air Crash Near Athens, Greece, supra,* 435 F.Supp.2d at1342 (in concluding that NDI was appropriate forum, Panel noted that district contains a majority of the actions in this litigation).

### 4.   The Northern District Of Illinois Cases Are Moving Forward Expeditiously

In the actions before Judge Leinenweber, several status conferences have been held, a process has been established for appointing lead counsel for the proposed class, and a date has been set, August 29, for the filing of a Master or Consolidated Complaint. *See* (Proposed) Order Granting Plaintiffs' Unopposed Motion To Amend The Court's July 31, 2007 Minute Order attached hereto as Exhibit A.  This material progress further supports coordination in the Northern District of Illinois.  *See e.g. In re JP Morgan Chase & Co. Securities Litigation, supra,* 452 F.Supp.2d at 1351 (Northern District of Illinois appropriate transferee district where one action, already filed there, is more procedurally advanced than two Delaware actions); *see also In re Imagitas, Inc., Drivers' Privacy Protection Act Litigation* 486 F.Supp.2d 1371, 1372 (Jud.Pan.Mult.Lit.,2007)  (Action in Middle District of Florida, relatively more procedurally advanced than the other actions, appropriately assigned to transferee judge already familiar with the contours of the litigation and able to steer the matter on a prudent course).

14

**5.     The Northern District of Illinois Offers an Accessible Metropolitan Location that is Geographically Convenient for Many of the Parties and their Counsel**

Illinois is a convenient forum for out-of-state witnesses and out-of-state counsel to reach by airplane. Two major international airports – O'Hare International Airport, a hub for United Airlines and American Airlines and Chicago Midway International Airport, a major hub for Southwest Airlines and ATA Airlines, as well as a focus city for AirTran Airways - are located within a reasonable driving distance of the Chicago courthouse where nine of the related actions are currently pending. *See In re Ameriquest Mortg. Co. Mortg. Lending Practices Litigation, supra,* 408 F.Supp.2d at 1355  (transfer to NDI because "this geographically central district will be a convenient location for a litigation already nationwide in scope."); *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation, supra,* 314 F.Supp.2d at 1377 -1379 (Illinois district is geographically centrally located for these actions which are pending throughout the United States); *In re Aimster Copyright Litigation, supra,* 177 F.Supp.2d at 1382 (Northern District of Illinois is a convenient, central forum).

## IV.    CONCLUSION

For the foregoing reasons, transfer of the various actions and for coordinated or consolidated pretrial proceedings in the Northern District of Illinois is appropriate under 28 U.S.C. § 1407. These actions involve common questions of fact concerning common allegations of negligence, unjust enrichment and other common law legal claims resulting from the lead found in Defendants' toys. Transfer of these actions for coordinated or consolidated pretrial proceedings will serve the convenience of the parties and witnesses, promote the just and efficient conduct of the litigation, and avoid inconsistent rulings on

important pretrial matters.  Importantly, transfer will avoid the substantial expense and

hardship of duplicative discovery that will include the production and review of

thousands of pages of documents and the depositions of witnesses.

DATED:  August 2⁴, 2007                     Respectfully submitted,

                                            KAPLAN FOX & KILSHEIMER LLP


                                            _____
                                            Laurence D. King
                                            Linda M. Fong
                                            KAPLAN FOX & KILSHEIMER LLP
                                            555 Montgomery Street, Suite 1501
                                            San Francisco, California 94111
                                            Telephone:  415-772-4700
                                            Facsimile:  415-772-4707
                                            lking@kaplanfox.com
                                            lfong@kaplanfox.com

                                            Frederic S. Fox
                                            Donald Hall
                                            KAPLAN FOX & KILSHEIMER LLP
                                            850 Third Avenue, 22nd Floor
                                            New York, New York 10022
                                            Telephone:  212-687-1980
                                            Facsimile:  212-687-7714
                                            ffox@kaplanfox.com
                                            dhall@kaplanfox.com

                                            Kenneth A. Wexler
                                            Andrae P Reneau
                                            Edward Anthony Wallace
                                            WEXLER TORISEVA WALLACE LLP
                                            1 North LaSalle Street
                                            Suite 2000
                                            Chicago, IL 60602
                                            Telephone:  312-346-2222
                                            Facsimile:  312-346-0022
                                            kaw@wtwlaw.us
                                            apr@wtwlaw.us
                                            eaw@wtwlaw.us

                                            Attorneys for Kimm Walton

DATED:  August 2007

HAGENS BERMAN SOBOL
SHAPIRO LLP

Elizabeth A. Fegan by cook

Elizabeth A. Fegan
Daniel J. Kurowski
Timothy Patrick Mahoney
HAGENS BERMAN SOBOL
SHAPIRO LLP
820 North Boulevard
Suite B
Oak Park, IL 60302
Telephone:  708-776-5600
Facsimile:  708-776-5601
beth@hbsslaw.com
dank@hbsslaw.com
timm@hbsslaw.com


Steve W. Berman
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Fifth Avenue
Suite 2900
Seattle, WA 98101
Telephone:  206-623-7292
Facsimile:  206-623-0594
steve@hbsslaw.com

Attorneys for Rebekah Lockhart, Theresa
Reddell, Channing Hesse, John O'Leary,
Christine Waller, Rebekah Lockhart, Theresa
Reddell, Cherise Wilson, Aive Rei-Ghafoor,
Tonya Tubbs, Thomas Toms, Tracy
Hofmann, Sheree Argiris, and Cheng Yin

DATED:  August 24, 2007

PRICE WAICUKAUSKI & RILEY

William N. Riley
Jamie Ranah Kendall
Christopher Allan Moeller
PRICE WAICUKAUSKI & RILEY
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone:  317-633-8787
Facsimile:  317-633-8797
wriley@price-law.com
jkendall@price-law.com
cmoeller@price-law.com

Attorneys for Chad J. Sweeney, Gregg
Theobald, Shay Theobald, Robert Miller,
Rachel Miller, Caryn Hudspeth, Patrick
Hudspeth, Claudine M Kreiner, Ryan R
Kreiner

Jeffrey Aaron Cooke
THE COOKE LAW OFFICE
PO Box 188
331 Columbia Street
Lafayette, IN 47902
Telephone:  765-423-5628
Facsimile:  765-423-1373
aaron@cookelaw.com

Attorneys for Chad J. Sweeney, Gregg
Theobald, Shay Theobald, Robert Miller,
Rachel Miller

John J. Pavich
Robert James Pavich
MONICO PAVICH & SPEVACK
20 South Clark St.
Suite 700
Chicago, IL 60603
Telephone:  312-782-8500
Facsimile:  312-853-2187

Kevin Barry Rogers
LAW OFFICES OF KEVIN ROGERS
307 North Michigan Avenue
Suite 305
Chicago, IL 60601
Telephone: 312-332-1188
Facsimile: 312-332-0192
rogers-law@sbcglobal.net

Attorneys for Paul Djurisic

Alex G. Streett
James A. Streett
STREETT LAW FIRM
107 West Main Street
Post Office Drawer F
Russellville, AR 72811-0659
Telephone: 479-968-2030
Facsimile: 479-968-6253

Attorneys for Christa Marie Stratton, James
Weldon Stratton, Cherise Wilson, Aive Rei-
Ghafoor, Tonya Tubbs, Thomas Toms, Tracy
Hofmann, Sheree Argiris, and Cheng Yin
Thomas A. Zimmerman, Jr.
Hugh J. Green
ZIMMERMAN AND ASSOCIATES, PC
100 W. Monroe Street
Suite 1300
Chicago, IL 60603
Telephone: 312-440-0020
Facsimile: 312-440-4180
tom@attorneyzim.com

Attorneys for Christopher Brady, Tom Brady,
Austin Rohde, Nicholas Rohde, Robyne
Rohde

John Balestriere
Craig Stuart Lanza
BALESTRIERE PLLC
225 Broadway, Suite 2700
New York, NY  10007
Telephone:  212-374-5401
Facsimile:  212-208-2613
jb@balestriere.net
clanza@balestriere.net

Attorneys for Plaintiff C. Kelly

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE THOMAS TRAINS PAINT LITIGATION | |
| **This Document Relates To:** | **Judge Harry D. Leinenweber** |
| *Hesse v. Learning Curve Brands, Inc. et al.*, No. 07 C 3514; | **Case No. 07 C 3514** |
| *Deke v. RC2 Corp. et al*, No. 07 CV 3609; | |
| *Walton v. RC2 Corp. et al*, No. 07 CV 3614; | |
| *O'Leary v. Learning Curve Brands, Inc., et al.*, No. 07 C 3682; | |
| *Djurisic v. Apax Partners, Inc. et al*, No. 07 C 3707; and | |
| *Reddell v. Learning Curve Brands, Inc. et al.*, No. 07 C 3747. | |

## [PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION TO AMEND THE COURT'S JULY 31, 2007 MINUTE ORDER

This matter having come before me on Plaintiffs' Unopposed Motion to Amend The Court's July 31, 2007 Minute Order, it is hereby ordered that the July 31, 2007 Minute Order is amended as follows: (i) the next status conference is scheduled for August 29, 2007 at 9 a.m.; (ii) Defendants do not have to answer or otherwise plead in response to any of the current complaints in the interim; (iii) Plaintiffs' counsel are to continue to confer with each other regarding an appropriate leadership structure and present their agreement or proposals to the Court at the August 29, 2007 status conference; (iv) Plaintiffs are to present a Master or Consolidated Complaint, and leave to file a Consolidated Complaint if necessary, at the August 29, 2007 status conference.

Dated: August __, 2007

_____
Hon. Harry D. Leinenweber
United States District Judge