COHN LIFLAND PEARLMAN
  HERRMANN & KNOPF LLP
PETER S. PEARLMAN
JEFFREY W. HERRMANN
Park 80 Plaza West-One
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JACK REISE
STUART A. DAVIDSON
JAMES L. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID MURDOCK, Individually and as Father and Next friend of BEAU FARISH MURDOCK and ANABELLE SAGE MURDOCK, Minor Children, On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>     vs.<br><br>RC2 CORPORATION, et al.,<br><br>          Defendants. | No. 2:07-cv-03376-WHW-MF<br><br>CLASS ACTION<br><br>DECLARATION OF PETER S. PEARLMAN |

PETER S. PEARLMAN declares as follows:

1.      I am an attorney at law of the State of New Jersey and a member of the bar of the United States District Court, District of New Jersey.

2.      I make this declaration in support of Plaintiffs' Motion for the Appointment of Interim Lead Counsel pursuant to Fed. R. Civ. P. 23(G).

3.      Annexed hereto as Exhibit "A" is a copy of the firm resume of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP.

4.      I declare under penalty of perjury that the foregoing statements made by me are true.

Executed on this 31st day of August, 2007.

_____
PETER S. PEARLMAN

# EXHIBIT "A"

# LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP** ("Lerach Coughlin") is a 180-lawyer law firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Houston, Philadelphia and Seattle (*www.lerachlaw.com*). Lerach Coughlin is actively engaged in complex litigation, emphasizing securities, consumer, insurance, healthcare, human rights, employment discrimination and antitrust class actions. Lerach Coughlin's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys who have successfully prosecuted thousands of class action lawsuits. As a result, Lerach Coughlin attorneys have been responsible for recoveries of more than $45 billion.

This successful track record stems from our experienced attorneys, including many who left partnerships at other firms or came to Lerach Coughlin from federal, state and local law enforcement and regulatory agencies, including dozens of former federal prosecutors. Lerach Coughlin also includes more than 25 former federal (circuit and district) and state judicial clerks.

Lerach Coughlin currently represents more institutional investors in securities and corporate litigation – public and multi-employer funds – than any other firm in the United States.

**William S. Lerach** is widely recognized as one of the leading securities lawyers in the United States. He has prosecuted hundreds of securities class and stockholder derivative actions, resulting in recoveries of billions of dollars. Mr. Lerach and the firm are involved in many of the largest and highest profile securities suits in recent years, including *Enron*, *Dynegy*, *AOL-TimeWarner* and *WorldCom*.

**Patrick J. Coughlin** has been lead counsel in several major securities matters, including *In re Apple Computer Sec. Litig.*, where he obtained a $100 million verdict. Prior to joining the firm's predecessor, Mr. Coughlin was a federal prosecutor in Washington, D.C. and San Diego handling complex white collar fraud matters. He helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown*, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman*. Mr. Coughlin now heads up the prosecution of the high profile *HealthSouth* and *Qwest* cases. Mr. Coughlin has handled and resolved a number of large securities cases involving such companies as 3Com, Boeing, IDB Communications Group, Unocal, Sybase, Connor, Media Vision, ADAC, Sunrise Medical, Valence, Sierra Tucson and Merisel. In addition, Mr. Coughlin spearheaded actions against the tobacco industry, resulting in the phase-out of the Joe Camel Campaign and a $12.5 billion recovery to the cities and counties of California – unique in the nation.

**John J. Stoia, Jr.** has prosecuted numerous nationwide complex securities class actions, including *In re Am. Cont. Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Mr. Stoia was a major part of the plaintiffs' trial team which resulted in verdicts against Keating and his co-defendants in excess of $3 billion and recoveries of over $240 million. Mr. Stoia has been involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s, including, among others, Prudential, New York Life, Transamerica Life Insurance Company, General American Life Insurance Company, Manufacturer's Life, Metropolitan Life, American General, US Life, Allianz, Principal Life and Pacific Life Insurance Company. Because of Mr. Stoia's efforts, victimized policyholders have recovered over $7 billion. Mr. Stoia also successfully litigated numerous cases brought against life insurance companies for racial discrimination involving the sale of small value or "industrial life" insurance policies during the 20th century, including serving as lead counsel in *McNeil v. Am. Gen. Life Ins. and Accident Co.*, the first major settlement involving discrimination claims ($234 million recovery). Mr. Stoia has since resolved other

race-based insurance cases, including *Brown v. United Life Ins. Co.*, *Morris v. Life Ins. Co. of Georgia* and *Thompson v. Metro. Life*. In late summer 2004, Mr. Stoia filed the first complaint alleging kickbacks and rigged bidding in the insurance industry and was hired by California Insurance Commissioner John Garamendi to represent the citizens of California in suits alleging these practices.

**Paul J. Geller** has served as lead or co-lead counsel in a majority of the securities class actions that have been filed in the southeastern United States in the past several years, including cases against *Hamilton Bancorp* ($ 8.5 million), *Prison Realty Trust* (total combined recovery of over $120 million); *Intermedia Corp.* ($38 million). Mr. Geller is currently one of the Court-appointed lead counsel in cases involving the alleged manipulation of the asset value of some of the nation's largest mutual funds, including *Hicks v. Morgan Stanley & Co.*, Case No. 01 Civ. 10071 (S.D.N.Y.); *Abrams v. Van Kampen Funds, Inc.*, Case No. 01 C 7538 (N.D. Ill.), and *In Re Eaton Vance Sec. Litig.*, Case No. 01-10911 (D. Mass.).

Mr. Geller has also successfully represented consumers in class-action litigation. He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement) and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

**Samuel H. Rudman** served in the Enforcement Division of the United States Securities & Exchange Commission in its New York Regional Office as a staff attorney, where he was responsible for numerous investigations and prosecutions of violations of the federal securities laws. Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public companies in the defense of securities class actions and also handled several white collar criminal defense matters.

Since joining the firm, Mr. Rudman has been responsible for the investigation and initiation of securities and shareholder class actions. In addition, Mr. Rudman developed a concentration in the area of lead plaintiff jurisprudence and has been responsible for numerous reported decisions in that area of securities law.

Mr. Rudman continues to focus his practice in the area of investigating and initiating securities and shareholder class actions and also devotes a considerable amount of time to representing clients in ongoing securities litigation.

**Darren J. Robbins** has extensive experience in federal and state securities litigation, serving as lead counsel in the *In re Dollar Gen. Sec. Litig.*, *In re Prison Realty Sec. Litig.*, and *In re Hanover Compressor Sec. Litig.* Mr. Robbins currently represents numerous pension funds in state and federal courts across the country and concentrates his practice in the structuring of corporate governance enhancements in connection with the resolution of shareholder class and derivative litigations. Mr. Robbins was recognized as *California Lawyer* Attorney of the Year for 2003 as a result of his participation as lead counsel in *Hanover Compressor*, where plaintiffs recovered approximately $85 million and obtained numerous groundbreaking corporate governance changes, including direct shareholder nomination of board members and the mandatory rotation of the company's outside audit firm.

# PRACTICE AREAS AND CURRENT CASES

## Securities

As recent corporate scandals clearly demonstrate, it has become all too common for companies and their executives to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true value. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Lerach Coughlin is the leader in the fight to provide investors with relief from corporate securities fraud. Lerach Coughlin utilizes a wide range of federal and state laws to provide investors with remedies, either by bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases on behalf of large institutional investors.

The firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Lerach Coughlin attorneys to lead roles in hundreds of complex class action securities and other cases. In the securities area alone, the firm's attorneys have been responsible for a number of outstanding recoveries on behalf of investors which, in the aggregate, exceed $45 billion. Currently, Lerach Coughlin is lead or named counsel in approximately 500 securities class action or large institutional investor cases, including:

- Enron securities class action
- AOL/Time Warner individual institutional investor private actions
- Cisco Systems securities class action
- Coke securities class action
- Oracle securities class action
- WorldCom Bond individual institutional investor private actions
- HealthSouth securities class action

One of the reasons for Lerach Coughlin's dominance stems from the firm's unparalleled dedication of resources towards investor recovery. For example, the firm has approximately 125 attorneys dedicated to investigating and prosecuting securities fraud class action and derivative cases on behalf of hundreds of institutional investors. In addition to ample human resources, Lerach Coughlin is also well capitalized to meet the demands of prosecuting complex cases.

Lerach Coughlin's securities department includes dozens of former federal and state prosecutors and trial attorneys. The firm's securities practice is also strengthened by the existence of a strong Appellate Department, whose collective work has resulted in numerous legal precedents. The securities department also utilizes an extensive group of in-house economic and damage analysts, investigators and forensic accountants to aid in the prosecution of complex securities issues.

While obtaining recoveries for our clients is our primary focus, Lerach Coughlin attorneys have also been at the forefront of securities fraud **prevention**. The firm's prevention efforts are focused on creating important changes in corporate governance, either as part of the global settlements of derivative and class cases or through court orders. Recent cases in which such changes were made include: *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.*, Case No. H-02-0410 (S.D. Tex.) (groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory

rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; creation and appointment of lead independent director with authority to set up board meetings); *In re Sprint Shareholder Lit., Case* No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) (in connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions which, among other things, established a truly independent Board of Directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis); *Teachers' Ret. Sys. of Louisiana v. Occidental Petroleum Corp.*, Case No. BC185009 (Cal. Super. Ct. 1998) (as part of the settlement, corporate governance changes were made to the composition of the company's Board of Directors, the company's Nominating Committee, Compensation Committee and Audit Committee); and *Barry v. E\*Trade Group, Inc.*, Case No. CIV419804 (Cal. Super. Ct., San Mateo County) (in connection with settlement of derivative suit, excessive compensation of CEO eliminated (reduced salary from $800,000 to zero; bonuses reduced and to be repaid if company restates earnings; reduction of stock option grant, and elimination of future stock option grants) and important governance enhancements obtained, including the appointment of a new unaffiliated outside director as chair of board's compensation committee). Through these efforts, Lerach Coughlin has been able to create substantial shareholder guarantees to prevent future securities fraud.

The firm works exclusively with noted corporate governance consultant Robert Monks and his firm, LENS Governance Advisors, to shape corporate governance remedies for the benefit of investors.

**Insurance**

Fraud in the insurance industry by industry executives, agents, brokers, lenders and others is one of the most costly crimes in America. Driving up everyone's insurance prices, some experts estimate the annual cost of this rising tide of white collar crime to be $120 billion nationally. Lerach Coughlin stands at the forefront in protecting the rights of consumers and state and federal entities against insurance fraud and unfair business practices in the insurance industry.

Beginning in August 2004, Lerach Coughlin was the first to expose the illegal and improper bid-rigging and kickback scandal between insurance companies and their brokers. The firm is currently one of the lead firms representing businesses, individuals, school districts, counties and the State of California in numerous actions in state and federal courts nationwide.

Our attorneys prosecute claims relating to the fraudulent and improper sale and servicing of insurance policies to recoup losses for victimized policyowners. For example, Lerach Coughlin attorneys have represented and continue to represent policyowners against insurance companies who made misrepresentations at the point of sale concerning how the policy will perform, the amount of money the policy will cost, and whether premiums will "vanish." Claims also include allegations that purchasers were misled concerning the financing of a new policy, falling victim to a "replacement" or "churning" sales scheme where they were convinced to use loans, partial surrenders or withdrawals of cash values from an existing permanent life insurance policy to purchase a new policy. To date, Lerach Coughlin has been responsible for over $4 billion in recoveries for defrauded policyholders.

Lerach attorneys have long been at the forefront of race discrimination litigation against life insurance companies for their practice of intentionally charging African-Americans and other minorities more for life insurance than similarly situated Caucasians. Our attorneys have recovered over $400 million for African-

Americans and other minority class members as redress for the civil rights abuses they were subjected to, including landmark recoveries in *McNeil v. Am. Gen. Life & Accident Ins. Co.*, *Thompson v. Metro. Life Ins. Co.* and *Williams v. United Ins. Co. of Am.*

## Antitrust

Lerach Coughlin's antitrust practice focuses on representing plaintiffs in complex litigation, such as small businesses and individuals who have been the victims of price-fixing, unfair trade practices or other anticompetitive conduct. The firm has taken a leading role in many of the largest federal price-fixing and price discrimination cases throughout the United States.

For example, Lerach Coughlin attorneys played a lead role in *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.), serving as Court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever. An excerpt from the Court's opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

*See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998).

One of the most significant opinions in the case was Judge Sweet's decision to certify the class of millions of investors over the strenuous objections of defendants. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996). Oral argument on behalf of plaintiffs on the class certification motion was presented by Leonard B. Simon, Of Counsel to Lerach Coughlin.

Other cases include:

- ***Hall v. NCAA*** (Restricted Earnings Coach Antitrust Litigation), Case No. 94-2392-KHV (D. Kan.). Lerach Coughlin attorneys served as lead counsel and lead trial counsel for one of three classes of coaches who alleged that the National Collegiate Athletic Association illegally fixed their compensation by instituting the "restricted earnings coach" rule. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $67 million. Trial counsel included the firm's attorney Bonny E. Sweeney.

- ***In re Disposable Contact Lens Antitrust Litig.***, MDL No. 1030 (M.D. Fla.). Lerach Coughlin attorneys served as co-lead counsel for a class of contact lens wearers alleging that the principal manufacturers of disposable contact lenses conspired with the leadership of the American Optometric Association and other eye care practitioners to boycott alternative channels of contact lens distribution, including pharmacies and mail order suppliers. The case settled for $89 million five weeks into a jury trial, shortly after plaintiffs' trial counsel, including Lerach Coughlin attorney Christopher M. Burke, defeated defendants' motion for a directed verdict.

- ***Microsoft I-V Cases***, J.C.C.P. Case No. 4106 (San Francisco Super. Ct.). Lerach Coughlin attorneys served on the executive committee in these consolidated cases, in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing and spreadsheet markets. In a settlement approved by the Court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

Current cases include:

- ***In re Currency Conversion Antitrust Litig.***, MDL No. 1409 (S.D.N.Y.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this multi-district litigation, in which a class of general purpose VISA and MasterCard cardholders allege that VISA and MasterCard, and certain leading member banks of Visa and MasterCard, conspired to fix and maintain the foreign currency conversion fee charged to U.S. cardholders. Plaintiffs also allege that defendants failed to adequately disclose the fee in violation of federal law. Discovery continues, and the plaintiffs' motion for class certification is fully briefed.

- ***Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*** (the ***Carbon Fiber Antitrust Litig.***), Case No. CV-99-7796 (C.D. Cal.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this consolidated class action, in which a class of purchasers alleges that the major producers of carbon fiber fixed the price of carbon fiber from 1993 to 1999. The trial Court denied defendants' motions to dismiss and granted plaintiffs' motion to certify the class, and the Ninth Circuit Court of Appeals has rejected defendants' challenge to the Court's class certification Order. Discovery is continuing.

- ***In re Carbon Black Antitrust Litig.***, MDL No. 1543 (D. Mass.). Lerach Coughlin attorneys serve as co-lead counsel for a class of businesses that allege that the major producers of carbon black unlawfully conspired to fix the price of carbon black, which is used in the manufacture of tires, rubber and plastic products, inks and other products, from 1999 through the present. The parties are currently engaged in discovery.

- ***In re DRAM Antitrust Litig.***, MDL No. 1486 (N.D. Cal.). Lerach Coughlin attorneys serve on the executive committee in this multi-district class action, in which a class of purchasers of high density low-cost-per-bit, random access memory chips, known as DRAM, allege that the leading manufactures of semiconductor products fixed the price of DRAM from the fall of 2001 through at least the end of June 2002. Lerach Coughlin attorneys took the lead in briefing and successfully opposing defendant's motion to dismiss, which was denied. The parties are engaged in discovery.

- ***In re Medical Waste Services Antitrust Litig.***, MDL No. 1546 (D. Utah). Lerach Coughlin attorneys are co-lead counsel in this multi-district antitrust class action litigation involving two separate cases. In the first (the *Tri-State Class Action*), plaintiffs allege defendants illegally conspired to allocate customers and territories in the market for the collection, transportation and disposal of medical waste in three mountain states. In the second case (the *Stoll Action*), the firm is co-lead counsel for a California class of plaintiffs who allege that Stericycle, the largest provider of medical waste collection and disposal services in the United States, unlawfully monopolized the market for these services in California. Discovery is ongoing, and plaintiffs expect to move for certification of the class in July 2004.

- ***In re Microsoft Antitrust Litig.***, MDL No. 1332 - D. Md. Lerach Coughlin attorneys have served as lead counsel, co-lead counsel and on the executive committees of more than 15 indirect purchaser actions against Microsoft brought in both state and federal courts alleging Microsoft illegally exercised its monopoly power in the operating system, word processing and spreadsheet markets. Plaintiffs successfully defeated motions to dismiss, challenges to class certification and motions for summary judgment in many state cases. Plaintiffs also engaged in a massive discovery effort in order to defeat Microsoft's challenges regarding its unlawful acts, and to prepare for trials in California and Minnesota, both of which ultimately resolved before the cases reached a jury. In many states, the parties are currently in the process of finalizing settlements and/or achieving Court approval in settlements which provide an unprecedented result for indirect purchaser class members.

- ***The California Wholesale Electricity Antitrust Litig.***, Case No. 02-CV-990 (S.D. Cal.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this litigation, which alleges buyers and sellers in markets operated by the California Power Exchange and California ISO manipulated markets during the period May 1, 2000 to June 19, 2001. The culmination of several years of litigation, review of company documents and investigation have led to the determination of widespread market manipulation of the California and Western energy markets during 2000 and 2001. The findings show the trading strategies and withholding of power, employed by Enron and other companies, were undertaken in an effort to manipulate the California energy market which led to increased energy prices for consumers. Plaintiffs reached a landmark settlement in the litigation with the Williams Companies worth an estimated $400 million. The case is currently before the Ninth Circuit Court of Appeals awaiting oral argument on several issues.

## Consumer

Lerach Coughlin's attorneys represent plaintiffs nationwide in a variety of important, complex consumer class actions. Lerach Coughlin attorneys have taken a leading role in many of the largest state and federal consumer fraud, human rights, environmental, public health and tobacco-related cases throughout the United States. Lerach Coughlin is also actively involved in numerous cases relating to the financial services industry, pursuing claims on behalf of individuals victimized by abusive mortgage lending practices, including violations of the Real Estate Settlement Procedures Act, market timing violations in connection with the sale of variable annuities and deceptive consumer credit lending practices in violation of the Truth-In-Lending Act.

Current consumer cases include:

- ***Dell's Bait and Switch Scheme.*** Plaintiffs have sued Dell, Inc. and its financing partners, Dell Financial Services and CIT Bank, in connection with their bait and switch sales and financing practices. The class action complaint alleges that Dell uses its advertisements to lure customers in, promising low-price computers. At the point of sale, Dell engages in one of several bait and switch schemes, including substituting lesser quality computer components for those ordered and paid for by customers, increasing the purchase price without adequate notice to customers, and canceling orders when Dell does not want to honor advertised deals. This class action also alleges illegal financing behavior, including Dell switching or failing to adequately disclose the terms of Dell's financing agreement, including less favorable financing plans, hidden charges and fees, and much higher interest rates.

- **eBay Shill Bidding Litigation.** Lerach Coughlin attorneys represent a plaintiff and class members in litigation against auction company eBay. The class action alleges unlawful shill bidding by eBay in its online auctions. Plaintiff alleges that eBay's practice of increasing winning bids, when an eBay customer uses eBay's proxy bidding tool, violates numerous California auction and consumer laws.

- **Illegal Internet Gambling Advertisements.** Lerach Coughlin represents the general public and a class of California residents who have been harmed by the illegal online advertising for gambling casinos. In a complaint upheld by Judge Kramer of the San Francisco complex litigation department, plaintiffs have alleged that the numerous online search engines have violated California Law by taking payment in exchange for advertising illegal gambling websites.

- **Cellphone Termination Fee Cases.** Lerach Coughlin attorneys are co-lead counsel in a lawsuit against the six major wireless telephone service providers in California. The plaintiffs allege that the early termination fee provisions in defendants' contracts are illegal penalties under California Law, designed to unfairly tether consumers to long-term contracts and prevent customers from changing their wireless service providers.

- **Tenet Healthcare Cases.** Lerach Coughlin attorneys are co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals. The firm's attorneys represent uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy" which resulted in price gouging of the uninsured. Judge McCoy of the Los Angeles Superior Court granted preliminary approval of a settlement between plaintiffs and Tenet.

- **AT&T Wireless Coverage Maps.** Lerach Coughlin attorneys represent consumers in a Los Angeles action that alleges false and misleading advertising by AT&T Wireless. Plaintiffs claim that AT&T Wireless's coverage maps are deceptive because they fail to disclose that defendants' service area is riddled with coverage gaps and holes. Plaintiffs seek injunctive relief from the court requiring AT&T Wireless to publish accurate coverage maps indicating where consumers are actually able to place wireless telephone calls throughout the Los Angeles region. AT&T Wireless was acquired by Cingular Wireless.

Prior consumer cases include:

- **Schwartz v. Visa.** After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States. In *Schwartz v. Visa Int'l, et al.*, Case No. 822404-4 (Cal. Super. Ct., Alameda County), California consumers sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The Court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the Court ordered full disclosure of the hidden fee.

- **In re Lifescan, Inc. Consumer Litig.**, Case No. CV-98-20321-JF (N.D. Cal.). Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics. The

Lifescan settlement was noted by the District Court for the Northern District of California as providing "exceptional results" for members of the class.

## Human Rights, Labor Practices and Public Policy

Lerach Coughlin attorneys have a long tradition of representing the victims of wrongdoing, ranging from unfair labor practices to the violation of human rights. These include:

- ***Does I, et al. v. The Gap, Inc., et al.***, Case No. 01 0031 (D. N. Mariana Islands). In this groundbreaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: ***Does I, et al. v. Advance Textile Corp., et al.***, Case No. 99 0002 (D. N. Mariana Islands), which alleged overtime violations by the garment factories under the Fair Labor Standards Act, and ***UNITE, et al. v. The Gap, Inc., et al.***, Case No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002), *cert. dismissed*, 539 U.S. 654 (2003). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The Court rejected defense contentions that any misconduct was protected by the First Amendment. The Court found the heightened constitutional protection afforded to noncommercial speech was inappropriate in such a circumstance.

- ***The Cintas Litigation***. Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

Shareholder derivative litigation brought by Lerach Coughlin at times also involves anti-union activities, including:

- ***Southern Pacific/Overnite***. A shareholder action stemming from several hundred million dollars in loss of value in the company due to systematic violations by Overnite of U.S. labor laws.

- ***Massey Energy***. A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million dollar penalties.

- ***Crown Petroleum***. A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

Lerach Coughlin attorneys also represented over 2,300 Taco Bell workers who were denied thousands of hours of overtime pay because, among other reasons, they were improperly classified as overtime exempt employees. Currently, the firm's attorneys represent CINTAS workers with similar claims of violation of federal and state labor laws.

## Environment & Public Health

Lerach Coughlin attorneys have also represented plaintiffs in class actions related to environmental law. The firm's attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center as *amici curiae* in a federal suit designed to uphold the state and federal use of project labor agreements ("PLAs"). The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds. Our Amici Brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large scale construction projects.

Attorneys with Lerach Coughlin have been involved in several other significant environmental cases, including:

- *Public Citizen v. US DOT.* Lerach Coughlin represented a coalition of labor, environmental, industry and public health organizations including Public Citizen, The International Brotherhood of Teamsters, California AFL-CIO and California Trucking Industry in a challenge to a decision by the Bush Administration to lift a congressionally-imposed "moratorium" on cross-border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act, and further, that the Administration did not first complete a comprehensive environmental impact analysis as required by the National Environmental Policy Act. The suit was dismissed by the Supreme Court, the Court holding that because the DOT lacked discretion to prevent cross-border trucking, an environmental assessment was not required.

- *Sierra Club v. AK Steel.* Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, RCRA and the Clean Water Act.

- *MTBE Litigation.* Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- *Exxon Valdez.* Brought on behalf of fisherman and of Alaska residents for billions of dollars in damages resulting from the greatest oil spill in U.S. history.

- *Avilla Beach.* A citizens' suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avilla Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, the Resource Conservation and Recovery Act and state laws such as California Proposition 65 exist to protect the environment and the public from abuses by corporate and government organizations. Companies can be found liable for negligence, trespass or intentional environmental damage and be forced to pay for reparations and to come into compliance with existing laws.

Prominent cases litigated by Lerach Coughlin attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation, and the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

**The Fight Against Big Tobacco**

Lerach Coughlin attorneys have led the fight against Big Tobacco since 1991. As an example, Lerach Coughlin attorneys filed the case that helped get rid of Joe Camel representing various public and private plaintiffs, including the State of Arkansas, the general public in California, the cities of San Francisco, Los Angeles and Birmingham, 14 counties in California, and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states. In 1992, Lerach Coughlin attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

**Pro Bono**

Lerach Coughlin attorneys have a long history of engaging in *pro bono* cases and have been recognized for their demonstrated commitment to providing *pro bono* services to the poor and disenfranchised. In 2003, Lerach Coughlin attorneys Eric Isaacson, Bonny Sweeney and Amber Eck were nominated for the prestigious 2003 California State Bar President's *Pro Bono* Law Firm of the Year award, based in large part on their efforts with the ACLU in *Sanchez v. County of San Diego*. The San Diego office received a commendation from the State Bar President for its "dedication to the provision of *pro bono* legal services to the poor and for the significant contribution [the firm] made to extending legal services to underserved communities." In recommending the firm for the award, Carl Poirot of the San Diego Volunteer Lawyer Program praised the firm for its "extraordinary efforts" in the case, stating that the "legal team generously gave of their time in the vigorous representation of a class of individuals who clearly do not have the financial resources nor wherewithal to retain legal counsel. The County's questionable conduct would have gone unchallenged but for the intervention" of the legal team.

*Sanchez* is a class action brought on behalf of welfare applicants against the County of San Diego seeking an injunction requiring the County to discontinue its "Project 100%" program. Under Project 100%, investigators from the San Diego D.A.'s office, Public Assistance Fraud Division, enter and search the home of every person who applies for welfare benefits, even though there is no suspicion of fraud or wrongdoing, and despite the fact that every individual is required to undergo an extensive application process with numerous verifications. Plaintiffs contend that these searches by law enforcement officers, performed without cause or suspicion, violate state and federal statutes and the Fourth Amendment of the U.S. Constitution.

The Court certified a class of all present and future applicants for CalWORKs cash aid and food stamps in San Diego County who are subject to a search of their home under Project 100%. Defendants have since admitted that the use of home visits to determine eligibility for food stamps violates California state regulations and has agreed to settle these claims. Although defendants were granted summary judgment on the remaining claims, plaintiffs are currently in the process of filing an appeal with the Ninth Circuit Court of Appeals and are optimistic about the prospects for success there. Due to the substantial number of hours dedicated to this important case, lead attorneys Eric Isaacson, Bonny Sweeney and Amber Eck were awarded the SDVLP Distinguished Service Award.

The San Diego office was also named as one of three finalists for the 1999 *Pro Bono* Law Firm of the Year award by the SDVLP, based in part for its work on the *Badua v. City of San Diego* case. *Badua* was a case brought on behalf of Jenny Badua against the City of San Diego. After working for the City for 15 years, she was placed on Long Term Disability ("LTD") leave due to severe manic depression. Under the City's LTD Plan, which is similar to many other LTD plans, individuals with physical disabilities receive benefits until age 65 or older, but individuals with mental disabilities receive benefits for only two years. We alleged that this differential treatment of persons with mental disabilities violated the Americans with Disabilities Act and federal and state disability nondiscrimination statutes. Unfortunately, after three years of working on the case, the Ninth Circuit

Court of Appeals issued an Opinion upholding the constitutionality of an LTD plan nearly identical to the one at issue, and plaintiffs settled the case for a nominal award to the plaintiff. However, the Disability Rights Education & Defense Fund ("DREDF") and the ACLU commended our efforts and described this as one of the most important issues of the year.

Our co-counsel, Linda Kilb of the DREDF, said in recommending us for the award: "The talent, effort and commitment of [Lerach Coughlin attorneys have] been invaluable, and it is difficult to imagine how the case could proceed without them. DREDF is enormously appreciative of [Lerach Coughlin attorneys'] continuing role in this case, and of SDVLP's assistance in finding us co-counsel of this caliber."

## JUDICIAL COMMENDATIONS

Lerach Coughlin attorneys have been commended by countless judges all over the country for the quality of representation in class action lawsuits.

When Judge Harmon appointed Lerach Coughlin attorneys as lead counsel for Enron securities purchasers, she commented:

> In reviewing the extensive briefing submitted regarding the Lead Plaintiff/Lead Counsel selection, the Court has found that the submissions of [Lerach Coughlin attorneys] stand out in the breadth and depth of its research and insight. Furthermore, Mr. Lerach has justifiably "beat his own drum" in demonstrating the role his firm has played thus far in zealously prosecuting this litigation on Plaintiffs' behalf.

Later, in a preliminary class certification order discussing the issues of Enron, Judge Harmon had this to say about our firm:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities.... Since the beginning they have propelled the Newby litigation forward. They have established the website by which attorneys serve and communicate with each other, established the central depository for discovery materials, negotiated an agreed, organized, nonduplicative, and pared-down discovery schedule, and negotiated complex settlements with a number of defendants.

See In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 458 (S.D. Tex. 2002).

In Stanley v. Safeskin Corp., Case No. 99 CV 454-BTM (S.D. Cal. May 25, 2004), where Lerach Coughlin obtained $55 million for the class of investors, Judge Moskowitz stated:

> I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

In Roy v. The Independent Order of Foresters, Case No. 97-6225 (SRC), slip op. at 32 (D.N.J. Aug. 3, 1999), Judge Chesler noted in his Opinion on class certification that:

The firm of [Lerach Coughlin], which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the Prudential case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the [Lerach Coughlin] firm has helped to secure for the plaintiff classes in both this case and the Prudential case are a testament to counsel's vigorous pursuit of the class interests.

In a November 9, 1998 Order approving settlements totaling over $1.027 billion, the Court in *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), commented of Lerach Coughlin attorneys, including Len Simon;

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties in this action achieved.

In approving a recovery in excess of $200 million in *Transamerica*, Judge Danielson of the California Superior Court made it a point to comment on the professionalism of Lerach Coughlin's lawyers:

> It would be hard to imagine what question I could come up with that I haven't already seen the information that I needed in the submissions that have been made to this Court. I can't remember anything so thoroughly and professionally handled in the 20-some odd years that I've been involved in the law. It is interesting to see law practiced honorably. And I think all of the lawyers who have involved themselves in this case can be very proud of their profession.

*See Natal v. Transamerica Occidental Life Ins. Co.*, Case No. 694829, Hearing Transcript dated June 26, 1997, at 39:3-12.

Similarly, in *Prudential*, in approving the settlement of a nationwide class action against a life insurer for deceptive sales practices, Judge Wolin observed:

> [T]he results achieved by plaintiffs' counsel in this case in the face of significant legal, factual and logistical obstacles and formidable opposing counsel, are nothing short of remarkable.... Finally, the standing and professional skill of plaintiffs' counsel, in particular Co-Lead Counsel, is high and undoubtedly furthered their ability to negotiate a valuable settlement and argue its merits before this Court. Several members of plaintiffs' counsel are leading attorneys in the area of class action litigation.

*See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 572, 585-86 (D.N.J. 1997), *vacated on other grounds*, 148 F.3d 283 (3d Cir. 1998). Lerach Coughlin attorneys were co-lead counsel in this litigation. At the Fairness Hearing in *Prudential*, Judge Wolin stated that "there is **no doubt** that Class Counsel have prosecuted the interests of the class members with the utmost vigor and expertise." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 519 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) (emphasis added).

In approving a $100 million settlement in *In re Prudential Securities Limited Partnerships Litig.*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996), for which Lerach Coughlin attorneys were part of the lead counsel, Judge Pollack noted that he had "the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation, both here and in prior complex litigation, and [was] impressed with the quality of plaintiffs' class counsel." In his Opinion on class certification, Judge Chesler elaborated that:

The firm which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the *Prudential* case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the firm has helped to secure for the plaintiff classes in both this case and the *Prudential* case are a testament to counsel's vigorous pursuit of the class interests.

*See Roy v. The Independent Order of Foresters*, Case No. 97-6225 (SRC), slip op. at 32 (D.N.J. Aug. 3, 1999).

At the Settlement Hearing in the *Chipcom* litigation, for which Lerach Coughlin attorneys were counsel, Judge Woodlock remarked:

[I]t seems to me that the level of legal services, the quality of legal services, the attention to the case on behalf of the plaintiffs, and ultimately plaintiffs' class, was really very high quality and ought to be recognized by an appropriately high percentage figure here.

Of course, I disagree on the merits of the case. That is not, however, to say that I disagree with the quality of the lawyering or disregarded the quality of the lawyering or thought that the quality of the lawyering was not at the highest level. To the contrary, I thought it was at the highest level and that ought also to be reflected here.

*See Nappo v. Chipcom Corp.*, Case No. CA-95-11114-WD (D. Mass.), Settlement Hearing Transcript dated June 26, 1997, at 13-14.

# NOTABLE CLIENTS

## Public Fund Clients

- **Alaska Permanent Fund Corporation.**

- **Alaska State Pension Investment Board.**

- **California Public Employees' Retirement System.**

- **California State Teachers' Retirement System.**

- **City of Birmingham Retirement and Relief System (Ala.).**

- **Teachers' Retirement System of the State of Illinois, Illinois Municipal Retirement Fund, Illinois State Board of Investment.**

- **Los Angeles County Employees Retirement Association (LACERA).**

- **Maine State Retirement System.**

- **The Maryland-National Capital Park & Planning Commission Employees' Retirement System.**

- **Milwaukee Employees' Retirement System.**

- **Minnesota State Board of Investment.**

- **New Hampshire Retirement System.**

- **Pompano Beach Police & Firefighters Retirement System.**

- **The Regents of the University of California.**

- **State Universities Retirement System of Illinois.**

- **State of Wisconsin Investment Board.**

- **Tennessee Consolidated Retirement System.**

- **Washington State Investment Board.**

- **Wayne County Employees' Retirement System.**

- **West Virginia Investment Management Board.**

### Multi-Employer Clients

- **Alaska Electrical Pension Fund.**

- **Alaska Hotel & Restaurant Employees Pension Trust Fund.**

- **Alaska Ironworkers Pension Trust.**

- **Alaska Laborers Employers Retirement Fund.**

- **Alaska U.F.C.W. Pension Trust.**

- **Chemical Valley Pension Fund of West Virginia.**

- **Carpenters Health & Welfare Fund of Philadelphia & Vicinity.**

- **Carpenters Pension Fund of Baltimore, Maryland.**

- **Carpenters Pension Fund of Illinois.**

- **Carpenters Pension & Annuity Fund of Philadelphia & Vicinity.**

- **Southwest Carpenters Pension Trust (f/k/a Carpenters Pension Trust for Southern California).**

- **Central States, Southeast and Southwest Areas Pension Fund.**

- **Construction Industry and Carpenters Joint Pension Trust for Southern Nevada.**

- **Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund.**

- **Heavy & General Laborers' Local 472 & 172 Pension & Annuity Funds**.

- **UNITE Family of Funds**.

- **1199 SEIU Greater New York Pension Fund**.

- **Massachusetts State Carpenters Pension Fund**.

- **Massachusetts State Guaranteed Annuity Fund**.

- **New England Health Care Employees Pension Fund**.

- **PACE Industry Union-Management Pension Fund**.

- **Rocky Mountain UFCW Unions & Employers Pension Plan**.

- **SEIU Staff Fund**.

- **Southern California Lathing Industry Pension Fund**.

- **United Brotherhood of Carpenters Pension Fund**.

## Additional Institutional Investors

- **The Dot.Com Fund**.

- **Northwestern Mutual Life Insurance Company**.

- **Standard Life Investments**.

## PROMINENT CASES AND PRECEDENT-SETTING DECISIONS

### Prominent Cases

• **In re Enron Sec. Litig.**, Case No. H-01-3624 (S.D. Tex.). In appointing Lerach Coughlin lawyers as sole lead counsel to represent the interests of Enron investors, the Court found that the firm's zealous prosecution and level of "insight" set it apart from its peers. Ever since, Lerach Coughlin and lead plaintiff The Regents of the University of California have aggressively pursued numerous defendants, including many of Wall Street's biggest banks and law firms. Despite each defendant's claim that as a matter of law it could not be found liable for plaintiffs' losses, Lerach Coughlin and The Regents have thus far obtained settlements in excess of $7.1 billion for the benefit of investors. Lerach Coughlin continues to press substantial and sizable claims against numerous defendants, including Enron's senior-most officers and several large international banks, with every intention of winning further large recoveries at trial for the victims of this corporate catastrophe.

• **In re NASDAQ Market-Makers Antitrust Litig.**, MDL No. 1023 (S.D.N.Y.). Lerach Coughlin attorneys served as Court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever. An excerpt from the Court's Opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

• **In re Dynegy Sec. Litig.**, Case No. H-02-1571 (S.D. Tex.). As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Lerach Coughlin obtained a combined settlement of $474 million from Dynegy Inc., Citigroup, Inc. and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha. Given Dynegy's limited ability to pay, Lerach Coughlin structured a settlement (reached shortly before the commencement of trial) that maximized plaintiffs' recovery without bankrupting the company. Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by the Regents, which Lerach Coughlin and the Regents believe will result in benefits to all of Dynegy's stockholders.

• **In re Am. Cont. Corp./Lincoln Sav. & Loan Sec. Litig.**, MDL No. 834 (D. Ariz.). Lerach Coughlin attorneys served as the Court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now infamous Lincoln Savings & Loan. The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws. Recoveries totaled $240 million on $288 million in losses. A jury also rendered verdicts of more than $1 billion against Keating and others.

• **In re 3Com, Inc. Sec. Litig.**, Case No. C-97-21083-JW (N.D. Cal.). A hard-fought class action alleging violations of the federal securities laws in which Lerach Coughlin attorneys served as lead counsel for the class and obtained a recovery totaling $259 million.

• **Mangini v. R.J. Reynolds Tobacco Co.**, Case No. 939359 (Cal. Super. Ct., San Francisco County). In this case, R.J. Reynolds admitted, "the *Mangini* action, and the way that it was vigorously litigated, was an

early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

- **Cordova v. Liggett Group, Inc., et al.**, Case No. 651824 (Cal. Super. Ct., San Diego County), and **People v. Philip Morris, Inc., et al.**, Case No. 980864 (Cal. Super. Ct., San Francisco County). Lerach Coughlin attorneys, as lead counsel in both these actions, played a key role in these cases which were settled with the Attorneys General global agreement with the tobacco industry, bringing $26 billion to the State of California as a whole and $12.5 billion to the cities and counties within California.

- **Does I, et al. v. The Gap, Inc., et al.**, Case No. 01 0031 (D. N. Mariana Islands). In this ground-breaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: **Does I, et al. v. Advance Textile Corp., et al.**, Case No. 99 0002 (D. N. Mariana Islands) – which alleged overtime violations by the garment factories under the Fair Labor Standards Act, and **UNITE, et al. v. The Gap, Inc., et al.**, Case No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- **In re Exxon Valdez**, Case No. A89 095 Civ. (D. Alaska), and **In re Exxon Valdez Oil Spill Litig.**, Case No. 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.). Lerach Coughlin attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained and is currently on appeal.

- **In re Washington Public Power Supply Sys. Sec. Litig.**, MDL No. 551 (D. Ariz.). A massive litigation in which Lerach Coughlin attorneys served as co-lead counsel for a class that obtained recoveries totaling $775 million after several months of trial.

- **Hall v. NCAA** (Restricted Earnings Coach Antitrust Litigation), Case No. 94-2392-KHV (D. Kan.). The firm was lead counsel and lead trial counsel for one of three classes of coaches in consolidated price fixing actions against the National Collegiate Athletic Association. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $54.5 million.

- **Newman v. Stringfellow** (Stringfellow Dump Site Litigation), Case No. 165994 MF (Cal. Super. Ct., Riverside County). Lerach Coughlin attorneys represented more than 4,000 individuals suing for personal injury and property damage arising from their claims that contact with the Stringfellow Dump Site may have caused them toxic poisoning. Recovery totaled approximately $109 million.

- **In re Prison Realty Sec. Litig.**, Case No. 3:99-0452 (M.D. Tenn.). Lerach Coughlin attorneys served as lead counsel for the class, obtaining a $105 million recovery.

- **In re Honeywell Int'l, Inc. Sec. Litig.**, Case No. 00-cv-03605 (DRD) (D. N.J.). Lerach Coughlin attorneys served as lead counsel for a class of investors that purchased Honeywell's common stock. The case charged defendants Honeywell and its top officers with violations of the federal securities laws, alleging

defendants made false public statements concerning Honeywell's merger with Allied Signal, Inc., and also alleging that defendants falsified Honeywell's financial statements. After extensive discovery, Lerach Coughlin attorneys obtained a $100 million settlement for the class.

- *In re AT&T Corp. Sec. Litig.,* MDL No. 1399 (N.J.). Lerach Coughlin attorneys served as lead counsel for a class of investors that purchased AT&T common stock. The case charged defendants AT&T Corporation and its former Chairman and Chief Executive Officer, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, the largest IPO in American history. After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million. In granting approval of the settlement, the Court stated the following about Lerach Coughlin:

  Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during litigation substantiates this characterization. The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court. Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

- *City of San Jose v. PaineWebber*, Case No. C-84-20601(RFP) (N.D. Cal.). Lerach Coughlin attorneys filed a lawsuit on behalf of the City of San Jose to recover speculative trading losses from its former auditors and 13 brokerage firms. In June 1990, following a six-month trial, the jury returned a verdict for the City, awarding over $18 million in damages plus pre-judgment interest. The City also recovered an additional $12 million in settlements prior to and during the trial.

- *Hicks v. Nationwide*, Case No. 602469 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys represented a class of consumers alleging fraud involving military purchasers of life insurance, in which a jury trial resulted in a full recovery for the class, plus punitive damages.

- *In re Nat'l Health Labs. Sec. Litig.*, Case No. CV-92-1949-RBB (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and obtained a pretrial recovery of $64 million in this securities fraud class action.

- *In re Informix Corp. Sec. Litig.*, Case No. C-97-1289-CRB (N.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel for the class and obtained a recovery of $137.5 million.

- *In re Apple Computer Sec. Litig.*, Case No. C-84-20148(A)-JW (N.D. Cal.). Lerach Coughlin attorneys served as lead counsel and after several years of litigation obtained a $100 million jury verdict in this securities fraud class action. The verdict was later upset on post-trial motions, but the case was settled favorably to the class.

- *In re Nat'l Med. Enters. Sec. Litig.*, Case No. CV-91-5452-TJH (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and recovered $60.75 million in this securities fraud class action.

- *In re Nucorp Energy Sec. Litig.*, MDL No. 514 (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this consolidated class action and recovered $55 million.

- *In re U.S. Fin. Sec. Litig.*, MDL No. 161 (S.D. Cal.). Lerach Coughlin attorneys acted as chairman of the Plaintiffs' Steering Committee and achieved a pretrial recovery of over $50 million.

- ***Barr v. United Methodist Church***, Case No. 404611 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as lead and trial counsel in this class action on behalf of elderly persons who lost their life savings when a church-sponsored retirement home that had sold them prepaid life-care contracts went bankrupt. After four years of intensive litigation – three trips to the U.S. Supreme Court and five months of trial – plaintiffs obtained a settlement providing over $40 million in benefits to the class members. In approving that settlement, Judge James Foucht praised the result as "a most extraordinary accomplishment" and noted that it was the "product of the skill, effort and determination of plaintiffs' counsel."

- ***Grobow v. Dingman*** (The Henley Group Litigation), Case No. 575076 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as co-lead counsel and obtained $42 million derivatively on behalf of The Henley Group, Inc.

- ***In re Itel Sec. Litig.***, Case No. C-79-2168A-RPA (N.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this securities class action that recovered $40 million.

- ***In re Fin. Corp. of Am.***, Case No. CV-84-6050-TJH(Bx) (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $41 million.

- ***In re Oak Indus. Sec. Litig.***, Case No. 83-0537-G(M) (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a recovery of $33 million.

- ***In re Wickes Cos. Sec. Litig.***, MDL No. 513 (S.D. Cal.). Lerach Coughlin attorneys served as liaison counsel in this consolidated securities law class action that recovered $32 million.

- ***Weinberger v. Shumway*** (The Signal Companies, Inc.), Case No. 547586 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as co-lead counsel in this derivative litigation challenging executive "golden parachute" contracts, and obtained a recovery of approximately $23 million.

- ***In re Seafirst Sec. Litig.***, Case No. C-83-771-R (W.D. Wash.). Lerach Coughlin attorneys served as co-lead counsel in this class action and obtained a pretrial recovery of $13.6 million.

- ***In re Waste Mgmt. Sec. Litig.***, Case No. 83-C2167 (N.D. Ill.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a pretrial recovery of $11.5 million.

- ***In re IDB Commc'ns Group, Inc. Sec. Litig.***, Case No. CV-94-3618 (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a pretrial recovery of $75 million.

- ***In re Boeing Sec. Litig.***, Case No. C97-1715Z (W.D. Wash.). A securities class action in which Lerach Coughlin attorneys served as co-lead counsel for the class obtaining a recovery in the amount of $92.5 million.

- ***Thurber v. Mattel, Inc., et al.***, Case No. CV-99-10368-MRP (C.D. Cal.). Lerach Coughlin attorneys served as Chair of the Executive Committee of Plaintiffs' Counsel and obtained a recovery of $122 million.

- ***In re Dollar Gen. Sec. Litig.***, Case No. 3:01-0388 (M.D. Tenn.). Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $172.5 million.

- *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Hanover Compressor Co.*, Case No. H-02-0410 (S.D. Tex.).  Lerach Coughlin attorneys served as lead counsel and obtained a recovery of $85 million.

- *In re Reliance Acceptance Group, Inc. Sec. Litig.*, MDL No. 1304 (D. Del.).  Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $39 million.

- *Schwartz v. Visa Int'l, et al.*, Case No. 822404-4 (Cal. Super. Ct., Alameda County).  After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States.  Lerach Coughlin attorneys represented California consumers who sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders.  The Court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest.  In addition, the Court ordered full disclosure of the hidden fee.

- *Morris v. Lifescan, Inc.*, Case No. CV-98-20321-JF (N.D. Cal.).  Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood glucose monitoring system for diabetics.  The Lifescan settlement was noted by the U.S. District Court for the Northern District of California as providing "exceptional results" for members of the class.

- *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55 (S.D.N.Y. 2003).  Lerach Coughlin attorneys served as lead counsel and obtained $145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D. N.J. 1997).  In one of the first cases of its kind, Lerach Coughlin attorneys obtained a settlement of over $1.2 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

- *Brody v. Hellman*, Case No. 00-CV-4142 (D. Colo.).  Lerach Coughlin was Court-appointed counsel for a class of former stockholders of US West, Inc. who sought to recover a dividend declared by US West before its merger with Qwest.  The merger closed before the record and payment dates for the dividend, which Qwest did not pay following the merger.  The case was hard fought, and the plaintiffs survived a motion to dismiss, two motions for summary judgment and successfully certified the class over vigorous opposition from defendants.  In certifying the class, the Court commented, "Defendants do not contest that Plaintiffs' attorneys are extremely well qualified to represent the putative class.  This litigation has been ongoing for four years; in that time Plaintiffs' counsel has proven that they are more than adequate in ability, determination, and resources to represent the putative class."  The case settled for $50 million, an outstanding settlement for the class given the novel and difficult legal questions raised in the case.

## Precedent-Setting Decisions

### Investor and Shareholder Rights

- *Dura Pharm., Inc. v. Broudo*, __ U.S. __, 125 S. Ct. 1627; 161 L. Ed. 2d 577 (2005).  Resolving a conflict among the circuits on pleading and proving loss causation, the Supreme Court adopted a rule that investors may proceed by pleading and proving that securities they purchased declined in value because of the fraud alleged – as, for example, by alleging that the securities' market price fell when news of the issuer's true financial state began to leak out.

- ***In re Daou Systems Inc. Sec. Litig.***, 411 F.3d 1006 (9th Cir. 2005). The Ninth Circuit sustained investors' allegations of accounting fraud and ruled that loss causation was adequately alleged by pleading that the value of the stock they purchased declined when the issuer's true financial condition was revealed.

- ***Barrie v. Intervoice-Brite, Inc.***, 409 F.3d 653 (5th Cir. 2005). The Fifth Circuit held that where corporate officers made public statements together, an investor's allegations of the false statements meets the heightened pleading requirements for federal securities claims, and that the corporate officer who stood by silently while false statements were made – failing to correct them – may be liable along with the officer who actually made them.

- ***Newby v. Enron Corp.***, 394 F.3d 296 (5th Cir. 2004). The Fifth Circuit upheld a partial settlement in a complex case that was structured to support further litigation of that case in order to maximize recovery against the remaining defendants.

- ***Illinois Municipal Retirement Fund v. Citigroup, Inc.***, 391 F.3d 844 (7th Cir. 2004). The Seventh Circuit upheld a district court's decision that the Illinois Municipal Retirement Fund was entitled to litigate its claims under the federal Securities Act of 1933 against WorldCom's underwriters before a state court rather than before the federal forum sought by the defendants.

- ***City of Monroe Employees Retirement System v. Bridgestone Corp.***, 387 F.3d 468 (6th Cir. 2005). The Sixth Circuit held that a statement regarding objective data supposedly supporting a corporation's belief that its tires were safe was actionable, where jurors could have found a reasonable basis to believe the corporation was aware of undisclosed facts seriously undermining the statement's accuracy.

- ***Nursing Home Pension Fund, Local 144 v. Oracle Corp.***, 380 F.3d 1226 (9th Cir. 2004). The Ninth Circuit ruled that defendants' fraudulent intent could be inferred from allegations concerning their false representations, insider stock sales and improper accounting methods.

- ***Southland Sec. Corp. v. INSpire Ins. Solutions Inc.***, 365 F.3d 353 (5th Cir. 2004). The Fifth Circuit sustained allegations that an issuer's CEO made fraudulent statements in connection with a contract announcement.

- ***No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.***, 320 F.3d 920 (9th Cir. 2003). *America West* is a landmark Ninth Circuit decision holding that investors pleaded with particularity facts raising a strong inference of corporate defendants' fraudulent intent under heightened pleading standards of the Private Securities Litigation Reform Act of 1995.

- ***Pirraglia v. Novell, Inc.***, 339 F.3d 1182 (10th Cir. 2003). In *Pirraglia*, the Tenth Circuit upheld investors' accounting-fraud claims, concluding that their complaint presented with particularity facts raising a strong inference of the defendants' fraudulent intent, and that absence of insider trading by individual defendants did not mean they lacked a motive to commit fraud.

- ***In re Cavanaugh***, 306 F.3d 726 (9th Cir. 2002). In *Cavanaugh*, the Ninth Circuit disallowed judicial auctions to select lead plaintiffs in securities class actions, and protected lead plaintiffs' right to select the lead counsel they desire to represent them.

- ***Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.***, 238 F.3d 363 (5th Cir. 2001). In *Lone Star Ladies*, the Fifth Circuit upheld investors' claims that securities-offering documents were incomplete and

misleading, reversing a district court Order that had applied inappropriate pleading standards to dismiss the case.

- **Bryant v. Dupree**, 252 F.3d 1161 (11th Cir. 2001). The Eleventh Circuit held that investors were entitled to amend their securities-fraud complaint to reflect further developments in the case, reversing a contrary district court Order.

- **Bryant v. Avado Brands**, 187 F.3d 1271 (11th Cir. 1999). Interpreting the Private Securities Litigation Reform Act of 1995, the Eleventh Circuit held that its provision requiring investors to plead facts raising a strong inference of scienter does not abrogate the principle that recklessness suffices to establish liability for violations of §10(b) of the Securities Exchange Act of 1934.

- **Berry v. Valence Tech., Inc.**, 175 F.3d 699 (9th Cir. 1999). The Ninth Circuit held that negative articles in the financial press do not cause the one-year "inquiry notice" statute of limitations to run, and indicated possible acceptance of an "actual knowledge" standard that would greatly extend the statute of limitations for victims of securities fraud.

- **Hertzberg v. Dignity Partners, Inc.**, 191 F.3d 1076 (9th Cir. 1999). The Ninth Circuit reversed dismissal of investors' claims that securities-offering documents were misleading, holding purchasers who bought shares in the aftermarket had standing to bring claims under the Securities Act of 1933 where a material fact is misstated or omitted from a registration statement.

- **StorMedia, Inc. v. Superior Court**, 20 Cal. 4th 449 (1999). Interpreting the anti-manipulation provisions of California's state securities laws, the California Supreme Court held that a corporation engages in the offer or sale of securities when it maintains an employee stock option or stock purchase plan, and thus may be liable under the statute for disseminating false or misleading public statements.

- **Diamond Multimedia Sys., Inc. v. Superior Court**, 19 Cal. 4th 1036 (1999). The California Supreme Court held that the California State securities laws' broad anti-manipulation provisions provide a remedy for out-of-state investors damaged by manipulative acts committed within the State of California.

- **Cooper v. Pickett**, 137 F.3d 616 (9th Cir. 1998). *Cooper* is the leading Ninth Circuit precedent on pleading accounting fraud with particularity. The Court held that plaintiffs stated claims against a company, its independent auditors and its underwriters, for engaging in a scheme to defraud involving improper revenue recognition.

- **McGann v. Ernst & Young**, 102 F.3d 390 (9th Cir. 1996). *McGann* is a leading federal appellate precedent interpreting Securities Exchange Act of 1934 §10(b)'s provision prohibiting manipulative or deceptive conduct "in connection with" the purchase or sale of a security. The Court rejected contentions that auditors could not be liable for a recklessly misleading audit opinion if they directly participated in no securities transactions. Rather, an accounting firm is subject to liability if it prepares a fraudulent audit report knowing that its client will include the report in an SEC filing.

- **Provenz v. Miller**, 102 F.3d 1478 (9th Cir. 1996). In *Provenz*, the Ninth Circuit reversed a district court's entry of summary judgment for defendants in an accounting fraud case. The decision is a leading federal appellate precedent on the evidence required to prove fraudulent revenue recognition.

- **Knapp v. Ernst & Whinney**, 90 F.3d 1431 (9th Cir. 1996). The Ninth Circuit affirmed a jury verdict entered for stock purchasers against a major accounting firm.

- **Warshaw v. Xoma Corp.**, 74 F.3d 955 (9th Cir. 1996). *Warshaw* is a leading federal appellate precedent on pleading falsity in securities class actions, sustaining allegations that a pharmaceutical company misled securities analysts and investors regarding the efficacy of a new drug and the likelihood of FDA approval. The Court also held that a company may be liable to investors if it misled securities analysts.

- **Gohler v. Wood**, 919 P.2d 561 (Utah 1996). The Utah Supreme Court held that investors need not plead or prove "reliance" on false or misleading statements in order to recover under a state law prohibiting misleading statements in connection with the sale of a security.

- **Fecht v. Price Co.**, 70 F.3d 1078 (9th Cir. 1995). *Fecht* is another leading precedent on pleading falsity with particularity. It sustained allegations that a retail chain's positive portrayal of its expansion program was misleading in light of undisclosed problems that caused the program to be curtailed. The Ninth Circuit held that investors may draw on contemporaneous conditions – such as disappointing results and losses in new stores – to explain why a company's optimistic statements were false and misleading. It also clarified the narrow scope of the so-called "bespeaks caution" defense.

- **In re Software Toolworks Sec. Litig.**, 50 F.3d 615 (9th Cir. 1995). In *Software Toolworks*, the Ninth Circuit reversed the summary judgment entered for defendants, including a company and its top insiders, independent auditors and underwriters. Among other things, the Court held that auditors and underwriters could be liable for their role in drafting a misleading letter sent to the SEC on the corporate defendant's attorneys' letterhead.

- **In re Pac. Enters. Sec. Litig.**, 47 F.3d 373 (9th Cir. 1995). The Ninth Circuit approved shareholders' settlement of a derivative suit as fair, reasonable, and adequate.

- **Kaplan v. Rose**, 49 F.3d 1363 (9th Cir. 1994). The Court reversed entry of summary judgment for defendants because investors presented sufficient evidence for a jury to conclude that a medical device did not work as well as defendants claimed.

- **In re Wells Fargo Sec. Litig.**, 12 F.3d 922 (9th Cir. 1993). *Wells Fargo* is a leading federal appellate decision on pleading accounting fraud, sustaining investors' allegations that a bank misrepresented the adequacy of its loan-loss reserves.

- **Krangel v. Gen. Dynamics Corp.**, 968 F.2d 914 (9th Cir. 1992). The Ninth Circuit dismissed defendants' appeal from a district court's Order upholding plaintiff investors' choice of forum by remanding the matter to the state court.

- **Colan v. Mesa Petroleum, Co.**, 951 F.2d 1512 (9th Cir. 1991). In a shareholder derivative action, the Ninth Circuit held that exchange of common stock for debt securities was a "sale" subject to the Securities Exchange Act of 1934's regulation of short-swing profits.

- **In re Apple Computer Sec. Litig.**, 886 F.2d 1109 (9th Cir. 1989). The Ninth Circuit reversed summary judgment for defendants, holding that investors could proceed to trial on claims that a company's representations about its new disk drive were misleading because they failed to disclose serious technical problems.

- **Blake v. Dierdorff**, 856 F.2d 1365 (9th Cir. 1988). The Ninth Circuit reversed a district court's dismissal of claims for fraud brought against a corporation's directors and its lawyers.

- ***Mosesian v. Peat, Marwick, Mitchell & Co.***, 727 F.2d 873 (9th Cir. 1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for §10(b) suits that are favorable to investors.

ADDITIONALLY, IN THE CONTEXT OF SHAREHOLDER DERIVATIVE ACTIONS, Lerach Coughlin attorneys have been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Three recent cases in which such changes were made include:

- ***Teachers' Retirement Sys. of Louisiana v. Occidental Petroleum Corp.***, Case No. BC185009 (Cal. Super. Ct.). As part of the settlement, corporate governance changes were made to the composition of the company's board of directors, the company's nominating committee, compensation committee and audit committee.

- ***In re Sprint Shareholder Litig.***, Case No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) In connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions, which, among other things, established a truly independent Board of Directors and narrowly defined "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis.

- ***Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.***, Case No. H-02-0410 (S.D. Tex.). Groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; and creation and appointment of lead independent director with authority to set up board meetings.

## Insurance

- ***Lebrilla v. Farmers Group, Inc.***, 119 Cal. App. 4th 1070 (2004). Reversing the trial court, the California Court of Appeal ordered class certification of a suit against Farmers, one of the largest automobile insurers in California. The case involves Farmers' practice of using inferior imitation parts when repairing insureds' vehicles.

- ***Dehoyos v. Allstate Corp.***, 345 F.3d 290 (5th Cir. 2003), *cert. denied*, 2004 U.S. LEXIS 3088 (Apr. 26, 2004). The Fifth Circuit Court of Appeals held that claims under federal civil rights statutes involving the sale of racially discriminatory insurance policies based upon the use of credit scoring did not interfere with state insurance statutes or regulatory goals and were not preempted under the McCarran-Ferguson Act. Specifically, the Appellate Court affirmed the district court's ruling that the McCarran-Ferguson Act does not preempt civil-rights claims under the Civil Rights Act of 1866 and the Fair Housing Act for racially discriminatory business practices in the sale of automobile and homeowners insurance. The U.S. Supreme Court denied defendants' petition for certiorari and plaintiffs can now proceed with their challenge of defendants' allegedly discriminatory credit scoring system used in pricing of automobile and homeowners insurance policies.

- ***In re Monumental Life Ins. Co.***, 345 F.3d 408, (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "computation by

means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances."

- *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209 (11th Cir. 2001). The Eleventh Circuit affirmed the district court's denial of the defendant's motion for judgment on the pleadings, rejecting contentions that insurance policyholders' claims of racial discrimination were barred by Alabama's common law doctrine of repose. The Eleventh Circuit also rejected the insurer's argument that the McCarran-Ferguson Act mandated preemption of plaintiffs' federal civil rights claims under 42 U.S.C. §§1981 and 1982.

- *Massachusetts Mutual Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282 (2002). The California Court of Appeal affirmed a trial court's Order certifying a class in an action by purchasers of so-called "vanishing premium" life-insurance policies who claimed violations of California's consumer-protection statutes. The Court held that common issues predominate where plaintiffs allege a uniform failure to disclose material information about policy dividend rates.

### Consumer Protection

- *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002), *cert. dismissed*, 539 U.S. 654 (2003). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The Court rejected defense contentions that such misconduct was protected by the First Amendment.

- *West Corp. v. Superior Court*, 116 Cal. App. 4th 1167 (2004). The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents. Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- *Spielholz v. Superior Court*, 86 Cal. App. 4th 1366 (2d Dist. 2001). The California Court of Appeal held that false advertising claims against a wireless communications provider are not preempted by the Federal Communications Act of 1934.

- *Day v. AT & T Corp.*, 63 Cal. App. 4th 325 (1998). The California Court of Appeal held that an action which seeks only to enjoin misleading or deceptive practices in the advertising of telephone rates does not implicate the federal filed-rate doctrine, and can proceed under Cal. Bus. & Prof. Code §§17200 and 17500. The Court also held that the claims were not preempted by the Federal Communications Act, that the California Public Utilities Commission does not have exclusive jurisdiction, that the doctrine of primary jurisdiction did not compel dismissal or stay of the action, and that the plaintiffs were not required to exhaust their administrative remedies.

- *Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057 (1994). The California Supreme Court upheld allegations that a cigarette manufacturer committed an unlawful business practice by targeting minors with its advertising. It flatly rejected the manufacturer's contention that the action was preempted by federal cigarette labeling laws.

- *Jordan v. Dep't of Motor Vehicles*, 75 Cal. App. 4th 449 (1999). The California Court of Appeal invalidated a non-resident vehicle "smog impact" fee imposed on out-of-state autos being registered for the first time in California, finding that the fee violated the Interstate Commerce Clause of the U.S. Constitution.

- **Clothesrigger, Inc. v. GTE Corp.**, 191 Cal. App. 3d 605 (1987).  The California Court of Appeal reversed the trial court's decision refusing to apply California Law to the claims of nonresident plaintiffs.  In reversing the lower court's ruling, the Court found that California Law may constitutionally apply to the claims of proposed nationwide class members who are not residents of California, provided there are significant contacts to the claims asserted by each member.

- **Lazar v. Hertz Corp.**, 143 Cal. App. 3d 128 (1983).  The California Court of Appeal ordered a consumer class certified in an Opinion that significantly broadened the right of injured consumers to bring class actions.

- **Barr v. United Methodist Church**, 90 Cal. App. 3d 259 (1979).  The California Court of Appeal rejected constitutional defenses to an action for civil fraud and breach of contract committed by religiously affiliated defendants.

### Antitrust

- **Law v. NCAA**, 134 F.3d 1010 (10th Cir. 1998).  The Tenth Circuit upheld summary judgment on liability for plaintiffs in college coaches' antitrust action against the National Collegiate Athletic Association on the issue of antitrust liability under §1 of the Sherman Antitrust Act, 15 U.S.C. §1 (plaintiffs subsequently prevailed on a damages trial).  It also upheld the district court's Order permanently enjoining the NCAA from enforcing the "restricted earnings coach" rule, through which NCAA member institutions limited the salary of certain coaches to $12,000 during the academic year.

- **In re NASDAQ Market-Makers Antitrust Litig.**, 172 F.R.D. 119 (S.D.N.Y. 1997).  In a case where plaintiffs alleged that approximately 30 NASDAQ market-makers engaged in a conspiracy to restrain or eliminate price competition, the District Court certified a class of millions of investors – including institutional investors to be represented by five public pension funds.

- **In re Disposable Contact Lens Antitrust Litig.**, 170 F.R.D. 524 (M.D. Fla. 1996).  Plaintiff contact lens purchasers alleged that defendant manufacturers conspired on a nationwide basis to eliminate competition and maintain artificially inflated prices for replacement contact lenses.  The District Court denied defendant manufacturers' motion to dismiss plaintiffs' Clayton Act claims and granted their motion for class certification, finding that plaintiffs' vertical–conspiracy evidence was general to the class and provided a colorable method of proving impact on the class at trial.

- **In re Currency Conversion Fee Antitrust Litig.**, 265 F. Supp. 2d 385 (S.D.N.Y. 2003).  In a case consolidating more than 20 putative class actions, plaintiff credit card holders alleged that two credit-card networks, Visa and MasterCard, and their member banks, conspired to fix the foreign-currency conversion fees they charged.  The District Court found that plaintiffs pleaded facts sufficient to permit the inference of an antitrust conspiracy, denying defendants' motion to dismiss the antitrust allegations.

- **Pharmacare v. Caremark**, 965 F. Supp. 1411 (D. Haw. 1996).  The District Court denied defendant's motion to dismiss plaintiffs' Robinson-Patman Act claim in a case where the largest company in the alternate-site infusion therapy industry had pleaded guilty to mail fraud for making improper payments to physicians in exchange for their referrals of patients.  Plaintiffs, defendant's competitors, alleged that they suffered injury as a result of defendant's agreements, which violated the anti-kickback provisions of the Clayton Act, §2(c) as amended by the Robinson-Patman Act, 15 U.S.C. §13(c).

## THE FIRM'S PARTNERS

**WILLIAM S. LERACH** is widely recognized as one of the leading securities lawyers in the United States. He has headed the prosecution of hundreds of securities class and stockholder derivative actions resulting in recoveries for defrauded shareholders amounting to billions of dollars. Mr. Lerach has been the subject of considerable media attention and is a frequent commentator on securities and corporate law, as well as a frequent lecturer. He represents numerous public and multi-employer pension funds in corporate securities matters.

He is the author of *Plundering America: How American Investors Got Taken for Trillions by Corporate Insiders - The Rise of the New Corporate Kleptocracy*, 8 Stanford J. of Law, Bus. and Fin. 1 (2002); *Why Insiders Get Rich, and the Little Guy Loses*, L.A. Times, Jan. 20, 2002; *The Chickens Have Come Home to Roost: How Wall Street, the Big Accounting Firms and Corporate Interests Chloroformed Congress and Cost America's Investors Trillions; Achieving Corporate Governance Enhancements Through Litigation*, keynote address to Council of Institutional Investors spring meeting, Mar. 27, 2001; *The Private Securities Litigation Reform Act of 1995 - 27 Months Later: Securities Class Action Litigation Under The Private Securities Litigation Reform Act's Brave New World*, Washington U. L. Rev., Vol. 76, No. 2 (1998); *An Alarming Decline In the Quality of Financial Reporting* (unpublished paper presented to 7th Annual BusinessWeek CFO Forum (June 1998); co author of *Civil RICO in Shareholders Suits Involving Defense Contractors* in Civil RICO Practice: Causes of Action, published by John Wiley & Sons, Inc. (1991); *The Incorporation Trap: How Delaware Has Destroyed Corporate Governance* (unpublished paper presented to the Council of Institutional Investors (1990)); *Securities Class Actions and Derivative Litigations Involving Public Companies: A Plaintiff's Perspective*, ALI/ABI, Civil Practice and Litigation in Federal and State Courts (1985), ABA Fall Meeting (1985) and PLI Securities Litigation, Prosecution and Defense Strategies (1985); *Alternative Approaches for Awarding Attorneys' Fees in Federal Court*

*Litigation: It's Time to Unload the Lodestar* (unpublished paper presented to the Ninth Circuit Judicial Conference (1984)); *Class Action and Derivative Suits in the Aftermath of Control Contests, Mergers and Acquisitions: Choice of Forum and Remedies; Attorney/Client Privilege in Class and Derivative Cases*, ABA 1984 Annual Meeting (1984); *Class Actions: Plaintiffs' Perspectives, Tactics and Problems*, ALI/ABA, Civil Practice and Litigation in Federal and State Courts (1984); *Life After Huddleston: Streamlining and Simplification of the Securities Class Action*, 7 Class Action Reports 318 (1982). He is also the author of *Termination of Class Actions: The Judicial Role*, McGough & Lerach, 33 U. Pitt L. Rev. 446 (1972); *Class and Derivative Actions Under the Federal Securities Laws* (1980 Regents of the University of California).

Mr. Lerach is chief counsel in many of the largest and highest profile securities class action and corporate derivative suits in recent years, including *Enron*, *Dynegy*, *Qwest* and *WorldCom*. He is listed in the "Best Lawyers in America" and is a Master of the American Inns of Court. Mr. Lerach has been the President of the National Association of Securities and Commercial Lawyers (NASCAT), a national group of attorneys concentrating in commercial and securities litigation. Mr. Lerach is a member of the Editorial Board of Class Action Reports and frequently lectures on class and derivative actions, accountants' liability, and attorneys' fees, and has been a guest lecturer at Stanford University, University of California at Los Angeles and San Diego, University of Pittsburgh, San Diego State University and at the Council of Institutional Investors and the International Corporate Governance Network. He is also a member of the American Law Institute faculty on Federal and State Class Action Litigation.

Mr. Lerach received his Bachelor of Arts degree from the University of Pittsburgh in 1967 and his Juris Doctor degree in 1970 where he graduated second in his class, *magna cum laude*, and was a member of the Order of the Coif. The University

recently bestowed one of its highest awards on Mr. Lerach, designating him a "*Legacy Laureate*" as one of the University's most outstanding graduates. Mr. Lerach was admitted to the Pennsylvania Bar in 1970 and to the California Bar in 1976. Mr. Lerach was a partner with Pittsburgh firm Reed Smith Shaw & McClay before moving to California. Mr. Lerach serves as Chairman of Lerach Coughlin. He is a member of the Pennsylvania and California Bar Associations and has been admitted to practice before numerous federal and state courts. He is a member of the ABA Litigation Section's Committee on Class Actions and Derivative Skills.

Mr. Lerach has testified before federal and state legislative committees concerning corporate governance and securities matters and is frequently quoted in the national media regarding corporate issues.

Mr. Lerach was honored by President Clinton who appointed him to be a member of the United States Holocaust Memorial Council.

**PATRICK J. COUGHLIN** is the firm's Chief Trial Counsel, and has been lead counsel for several major securities matters, including one of the largest class action securities cases to go to trial, *In re Apple Computer Sec. Litig.*, Case No. C-84-20148(A)-JW (N.D. Cal.). Mr. Coughlin has argued in the United States Supreme Court on behalf of shareholders, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), in which an important decision was issued by the high court concerning loss causation in securities cases. Although the Court overruled established 9th Circuit precedent, the decision is widely regarded as a favorable one for investors alleging fraud.

Formerly, Mr. Coughlin was an Assistant United States Attorney in the District of Columbia and the Southern District of California, handling complex white collar fraud matters. During this time, Mr. Coughlin helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown, et al.*, Case No. 86-3056-SWR, as well as an infamous oil fraud scheme

resulting in a complex murder-for-hire trial, *United States v. Boeckman, et al.*, Case No. 87-0676-K.

Mr. Coughlin's recent trials involving securities violations include cases against Wells Fargo and California Amplifier. Cases that settled on the eve of trial include cases against Alcatel and America West. Throughout his career, Mr. Coughlin has tried more than 50 jury and non-jury trials. Mr. Coughlin tried one of the largest private RICO trials against the major tobacco companies on behalf of hundreds of thousands of Ohio Taft-Hartley health and welfare fund participants. Mr. Coughlin also helped end the Joe Camel ad campaign, a cartoon ad campaign that targeted children and secured a $12.5 billion recovery for the Cities and Counties of California in the landmark 1998 state settlement with the tobacco companies.

**JOHN J. STOIA, JR**. received his Bachelor of Science degree from the University of Tulsa in 1983. While working on his degree, Mr. Stoia was elected President of the National Political Science Honor Society and graduated with highest honors. In 1986, Mr. Stoia received his Juris Doctor degree from the University of Tulsa and graduated in the top of his class.

In 1987, Mr. Stoia graduated from the Georgetown University Law Center in Washington, D.C., receiving his Masters of Law in Securities Regulation. Thereafter, Mr. Stoia served as an enforcement attorney with the U.S. Securities and Exchange Commission. Mr. Stoia is one of the founding partners of Lerach Coughlin.

Mr. Stoia worked on numerous nationwide complex securities class actions, including *In re Am. Cont. Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Mr. Stoia was a member of plaintiffs' trial team which obtained verdicts against Mr. Keating and his co-defendants in excess of $3 billion and settlements of over $240 million.

Mr. Stoia was involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress