Dennis M. Reznick (DR4841)
Charles W. Stotter (CS4313)
EDWARDS ANGELL PALMER & DODGE LLP
One Giralda Farms
Madison, NJ 07940
(973) 520-2300

Judith S. Okenfuss, Esq.  (*Admitted Pro Hac Vice*)
James L. Petersen, Esq.  (*Admitted Pro Hac Vice*)
ICE MILLER LLP
One American Square, Suite 3100
Indianapolis, IN 46282-0200

*Attorney for Defendants RC2 Corporation,*
*Learning Curve Brands, Inc., Wal-Mart Stores, Inc.,*
*and Toys "R" Us, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DAVID MURDOCK, Individually and as Father and Next Friend of BEAU FARISH MURDOCK and ANABELLE SAGE MURDOCK, minor children, on behalf of all others similarly situated, | ) ) ) ) ) | Civil Action No.  2:07-CV-03376 (WHW-MF) |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| RC2 CORPORATION, LEARNING CURVE BRANDS, INC., LEARNING CURVE BRANDS, INC. d/b/a RC2 BRANDS, INC., WAL-MART STORES, INC. and TOYS "R"US, INC., | ) ) ) ) ) ) | **[Document Electronically Filed]** |
| Defendants. | ) ) | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'<br>MOTION TO DISMISS CLASS ACTION COMPLAINT</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT AND STATEMENT OF FACTS ............................................ 1

LEGAL ARGUMENT ................................................................................................................ 3

I.      STANDARD OF LAW FOR DISMISSAL ...................................................... 3

II.     ALABAMA LAW SHOULD BE APPLIED TO MURDOCK'S CLAIMS ..................... 3

III.    PLAINTIFF'S NO-INJURY PRODUCT LIABILITY COMPLAINT SHOULD BE
        DISMISSED IN ITS ENTIRETY FOR FAILURE TO STATE A CLAIM AND
        LACK OF STANDING .................................................................................. 7

        A.  Plaintiff Has Failed To Allege A Cognizable Injury Under Alabama Law;
            Thus, His Complaint Should Be Dismissed For Failure To State A Claim ...... 10

        B.  Plaintiff's Failure To Assert A Legally Cognizable Injury Deprives Him Of
            Standing To Bring The Action ........................................................................ 14

        C.  Strong Policy Supports Uniform Rejection Of "No Injury" Products-Related
            Claims Like Those Asserted By Plaintiff ......................................................... 15

IV.     THE ECONOMIC LOSS DOCTRINE PRECLUDES PLAINTIFF'S NEGLIGENCE
        CLAIM (COUNT I) ...................................................................................... 16

V.      PLAINTIFF DOES NOT ALLEGE THE THRESHOLD REQUIREMENTS FOR
        HIS BREACH OF WARRANTY CLAIMS (COUNTS II & III) ................................. 18

        A.  Plaintiff's Failure To Provide Pre-Suit Notice Of The Alleged Breach Is Fatal
            To His Claims For Breach Of Implied And Express Warranties..................... 19

        B.  Plaintiff Lacks Privity With RC2 Defendants .................................................. 20

VI.     MEDICAL MONITORING (COUNTS IV & V) IS NOT A RECOGNIZED CLAIM
        IN ALABAMA ............................................................................................... 21

VII.    PLAINTIFF FAILS TO ALLEGE THE THRESHOLD AMOUNT IN
        CONTROVERSY NECESSARY TO MAINTAIN A CLAIM UNDER THE
        CONSUMER PRODUCT SAFETY ACT (COUNT VI) .......................................... 22

VIII.   PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF STATE
        STATUTORY CONSUMER FRAUD ACT (COUNT VII) ........................................ 26

CONCLUSION ........................................................................................................................ 28

## TABLE OF AUTHORITIES

**CASES**

*Alloway v. Gen. Marine Indus., L.P.,*
  695 A.2d 264 (N.J. 1997) ...................................................................................16

*Angus v. Shiley Inc.,*
  989 F.2d 142 (3d Cir. 1993) .............................................................8, 12, 16, 25

*Arias v. Figueroa,*
  930 A.2d 472 (N.J. Super. Ct. App. 2007) .............................................................4

*Bell Atlantic Corp. v. Twombly,*
  127 S. Ct.  1955 (2007) ....................................................................................3, 4

*Bennett v. United Auto Parts, Inc.,*
  315 So. 2d 579 (Ala. 1975) ................................................................................19

*Billions v. White and Stafford Furniture Co., Inc.,*
  528 So. 2d 878 (Ala. Civ. App. 1988)............................................................26, 27

*Britt v. McKinney,* 529 F.2d 44 (1st Cir. 1976)................................................................10

*Bravman v. Baxter Healthcare Corp.,*
  794 F. Supp. 96 (S.D.N.Y. 1992), *rev'd in part on other grounds,*
  984 F.2d 71 (2d Cir 1993) ...................................................................................16

*Briehl v. Gen. Motors Corp.,*
  172 F.3d 623 (8th Cir. 1999) ...........................................................................7, 8

*Britt v. McKenney,*
  592 F.2d 44 (1st Cir. 1976) ................................................................................10

*Canty v. Ever-Last Supply, Co.,*
  685 A.2d 1365 (N.J. Super. Ct. Law Div. 1996)...................................................17

*Camden County Bd. Of Chosen Freeholders v. Beretta U.S.A. Corp.,*
  123 F. Supp. 2d 245 (D.N.J. 2000), *aff'd,* 273 F.3d 536 (3d Cir. 2001)...............14

*Chin v. Chrysler Corp.,*
  182 F.R.D. 448 (D.N.J. 1998) ...............................................................................6

*Cippolone v. Liggett Group, Inc.,*
  683 F. Supp. 1487 (D.N.J. 1988), *rev'd in part on other grounds,*
  505 U.S. 504 (1992) ...........................................................................................19

*Coghlan v. Wellcraft Marine Corp.,*
  240 F.3d 449 (5th Cir. 2001) ............................................................7, 13

*Dairyland Ins. Co. v. Gen. Motors Corp.,*
  549 So. 2d 44 (Ala. 1989) ................................................................17

*Erny v. Estate of Merola,*
  792 A.2d 1208 (N.J. 2002) ..............................................................4, 5

*Estate of David Gleiberman v. The Hartford Life Ins. Co.,*
  94 Fed. App'x. 944 (3d Cir. 2004) ..........................................................2

*Ex parte Exxon Corp.,*
  725 So. 2d 930 (Ala. 1998) ................................................................26

*Fink v. Ricoh Corp.,*
  839 A.2d 942 (N.J. Super. Ct. Law Div. 2003) ..................................................26

*Ford v. Toys R Us, Inc.,*
  No. W2005-01117-COA-R3-CV, 2006 WL 561865 (Tenn. Ct. App.
  March 9, 2006) (appeal denied August 21, 2006) ....................................................2

*Ford Motor Co. v. Rice,*
  726 So. 2d 626 (Ala. 1998) ....................................................11, 13, 18

*Frank v. DaimlerChrysler Corp.,*
  741 N.Y.S.2d 9 (N.Y. App. Div. 2002) ............................................................9, 10

*Fu v. Fu,*
  733 A.2d 1133 (N.J. 1999) ................................................................4

*Givens v. Rent-A-Center, Inc.,*
  720 F. Supp. 160 (S.D. Ala. 1988), *aff'd*, 885 F.2d 879 (11th Cir. 1989) ............27

*Griswold Insulation Co. v. Lula Cotton Processing Co.,*
  540 F. Supp. 1334 (M.D. Tenn. 1982) ................................................................24

*Heindel v. Pfizer,*
  381 F. Supp. 2d 364 (D.N.J. 2004) ....................................................5, 6

*Hinton v. Monsanto Co.,*
  813 So. 2d 827 (Ala. 2001) ..........................................................10, 11, 13, 21, 22

*Hobbs v. Gen. Motors Corp.,*
  134 F. Supp. 2d 1277 (M.D. Ala. 2001) ................................................19, 20, 26

*Houston County Health Care Auth. v. Williams,*
  961 So. 2d 795 (Ala. 2006), *as modified on denial of reh'g*, (Jan. 12, 2007) ........11

iii

*In re Air Bag Prod. Liab. Litig.,*
      7 F. Supp. 2d 792 (E.D. La. 1998) ......................................................................8

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.,*
      155 F. Supp. 2d 1069 (S.D. Ind. 2001), *rev'd in part on other grounds,*
      288 F.3d 1012 (7th Cir. 2002) ............................................................................8

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.,*
      174 F.R.D. 332 (D.N.J. 1997) ............................................................................6

*In re the Prudential Ins. Co.,*
      975 F. Supp. 584 (D.N.J. 1997).........................................................................28

*Kent Village Assocs. Joint Venture v. Smith,*
      657 A.2d 330 (Md. Spec. Ct. App. 1995) .........................................................25

*Lebegern v. Forman,*
      471 F.3d 424 (3d Cir. 2006) ...........................................................................4, 5

*Lloyd Wood Coal Co. v. Clark Equip. Co.,*
      543 So. 2d 671 (Ala. 1989) ...............................................................................17

*Naporano Iron & Metal Co. v. Am. Corp.,*
      79 F. Supp. 2d 494 (D.N.J. 1999).......................................................................28

*Parker v. Bell Ford, Inc.,*
      425 So. 2d 1101 (Ala. 1983) .............................................................................19

*Pfizer, Inc. v. Farsian,*
      682 So. 2d 405 (Ala. 1996) ..........................................................11, 12, 13, 18

*Riegel Textile Corp. v. Celanese Corp.,*
      649 F.2d 894 (2d Cir. 1981) .........................................................................23, 24

*Rivera v. Wyeth-Ayerst Lab.,*
      283 F.3d 315 (5th Cir. 2002) .............................................................................15

*Rowe v. Hoffman-La Roche, Inc.,*
      917 A.2d 767 (N.J. 2007) ....................................................................................4

*Sanitoy, Inc. v. Shapiro,*
      705 F. Supp. 152 (S.D.N.Y. 1989) ................................................................24, 25

*Simmons v. Clemco Indus.,*
      368 So. 2d 509 (Ala. 1979) ...............................................................................19

*Southern Bakeries, Inc. v. Knipp,*
      852 So. 2d 712 (Ala. 2002) ..........................................................................11, 21

*Spain v. Brown & Williamson Tobacco Corp.,*
    872 So. 2d 101 (Ala. 2003) ............................................................................17

*Spring Motors Dist., Inc. v . Ford Motor Co.,*
    489 A.2d 660 (N.J. 1985) ...............................................................................20

*State Farm Fire & Cas. Co. v. J.B. Plastics, Inc.,*
    505 So. 2d 1223 (Ala. 1987) ..........................................................................20

*Veazey v. Doremus,*
    510 A.2d 1187 (N.J. 1986) ...............................................................................4

*Verb v. Motorola, Inc.,*
    672 N.E.2d 1287 (Ill. App. Ct. 1996) ...............................................................9

*Ware v. Ciba-Geigy Corp.,*
    No. ATL-L-243-04, 2005 WL 1563245 (N.J. Super. Ct. Law Div.
    May 20, 2005) ...........................................................................................21, 22

*Weaver v. Chrysler Corp.,*
    172 F.R.D. 96 (S.D.N.Y. 1997)......................................................................8, 9

*Willett v. Baxter Int'l, Inc.,*
    929 F.2d 1094 (5th Cir. 1991) ....................................................................15, 16

*Yost v. Gen. Motors Corp.,*
    651 F. Supp. 656 (D.N.J. 1986).........................................................................8

*Yu v. Int'l Bus. Mach. Corp.,*
    732 N.E.2d 1173 (Ill. App. Ct. 2000)................................................................9

*Ziegelmann v. DaimlerChrysler Corp.,*
    649 N.W.2d 556 (N.D. 2002) .......................................................................9, 10

**STATUTES**

Consumer Product Safety Act, 15 U.S.C. §§ 2051 through 2083 .............22, 23, 24, 25, 26

28 U.S.C. § 1331 ...............................................................................................22

Federal Question Jurisdictional Amendments of 1980, P.L. 96-486
    (December 1, 1980) ......................................................................................22

Ala. Code § 7-2-318 ..........................................................................................20

Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-10 ...................................26, 27

N.J.S.A. § 2A:58C-1 though 58C-11 ...............................................................17

N.J.S.A. § 12A:2-318 ................................................................................................20

Fed. R. Civ. P. 9(b) ..................................................................................................28

Fed. R. Civ. P. 12(b)(6) .............................................................................................3

**MISCELLANEOUS**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
      § 1216, pp. 235-36 (3d. Ed. 2004) ............................................................3

Maneker, Meryl C., Defending The No-Injury Products Liability Class Action,
      14 No. 3 Prac. Litigator (May 2003)..........................................................7

32A Am. Jur. 2d Federal Courts § 884.....................................................23, 24

Defendants, RC2 Corporation, Learning Curve Brands, Inc., Learning Curve Brands, Inc. d/b/a RC2 Brands, Inc. (collectively "RC2"), Wal-Mart Stores, Inc. and Toys "R" Us, Inc., (collectively "Defendants") by counsel, hereby submit the following Memorandum in Support of Defendants' Motion to Dismiss The Class Action Complaint ("Motion to Dismiss").

## PRELIMINARY STATEMENT AND STATEMENT OF FACTS

On June 13, 2007, RC2, in cooperation with the U.S. Consumer Product Safety Commission, jointly announced a voluntary recall of various Thomas & Friends™ Wooden Railway Toys. (Compl. ¶ 18).[1]  The basis of the recall was that some of these toys contained excess lead in the surface paint. As part of this recall, RC2 offered to replace any of the toys included in the recall and reimburse purchasers for the cost of postage in returning the toys.

A large number of purchasers have chosen to avail themselves of the recall offer and have sent to RC2 any toys they own which fall within the recall. However, other purchasers have chosen to bring litigation instead. Currently, there are 17 cases seeking nationwide class action certification pending in the federal district courts throughout the country. David Murdock, the plaintiff in the pending case, is a resident of Jefferson County, Alabama. (Compl. ¶ 10). He is the parent of two minor children for whom he allegedly purchased three Thomas & Friends™ Wooden Railway Toys which were included within the recall. (Compl. ¶ 10). Although Murdock contends that his children ingested some of the paint on one of the toys, there are no allegations of physical injury in the Complaint. (Compl. ¶ 30).

---

[1] References to "Compl. ¶ __" are to the Class Action Complaint filed in this action, Docket Entry No. 1.

The Complaint contains class action allegations and seven different causes of action. For purposes of this Motion to Dismiss, the class action allegations are not addressed.[2] The claims brought by Plaintiff against all Defendants, are: (1) Negligence; (2) Breach of Implied Warranty; (3) Breach of Express Warranty; (4) Negligence and Breach of Express and Implied Warranties for Purposes of Establishing Medical Monitoring; (5) Strict Products Liability for Purposes of Establishing Medical Monitoring; (6) Violation of the Consumer Product Safety Act & Consumer Product Safety Rules; and, (7) Violation of the New Jersey Consumer Fraud Act and Similar Consumer Protection Statutes of Other States.

The damages alleged by the Plaintiff are non-specific. With respect to his Negligence claim, he states that he has suffered "loss and damages."[3] (Compl. ¶ 46). On the Breach of Implied Warranty and Breach of Express Warranty claims, Plaintiff alleges that he has suffered damages including, but not limited to, "an increased risk of serious health problems." (Compl. ¶¶ 52, 58). As to the claims related to alleged violations of the Consumer Product Safety Act and the New Jersey Consumer Fraud Act, Plaintiff alleges "an increased risk of serious health problems" and that Plaintiff has "paid for products that are unsuitable for any use." (Compl. ¶¶ 84, 91). Despite the broad range of claims brought by Plaintiff, as discussed more fully below, Plaintiff has failed to allege facts which raise a right to any of the requested relief.

---

[2] A court may grant a Motion to Dismiss a named plaintiff's claims prior to certification of a class. *See, e.g., Estate of David Gleiberman v. The Hartford Life Ins. Co.*, 94 Fed. App'x. 944, 948 (3d Cir. 2004) (affirming New Jersey District Court's decision to grant a motion to dismiss the named plaintiffs for failure to state a claim where Court ruled prior to deciding the issue of class certification) (citing *Searles v. Southeastern Pa. Transp. Auth.*, 990 F.2d 789, 790 n.1 (3d Cir. 1993)).

[3] The voluntary recall in this case was made in cooperation with the CPSC. To the extent Plaintiff seeks additional remedies within the purview of the CPSC, such claims frustrate the primary jurisdiction of the CPSC and should be dismissed. *See Ford v. Toys R Us, Inc.*, No. W2005-01117-COA-R3-CV, 2006 WL 561865 (Tenn. Ct. App. March 9, 2006) (appeal denied, August 21, 2006).

# LEGAL ARGUMENT

## I.    Standard Of Law For Dismissal

The United States Supreme Court recently clarified the standard for dismissal under Federal Rule of Civil Procedure 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). The court abandoned the frequently-quoted language which permitted a court to dismiss a complaint where it appeared "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1968 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Rather, a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ." (citations omitted). *Twombly*, 127 S. Ct. at 1964-65. Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1216, pp. 235-36 (3d. ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")). In this case, Plaintiff has failed to allege facts sufficient to raise his right to relief above the speculative level. As discussed below, Plaintiff's Complaint should be dismissed in its entirety.

## II.    Alabama Law Should Be Applied To Murdock's Claims

This Motion to Dismiss addresses the claims of Murdock, the only named Plaintiff in this case. Although Murdock filed this action in a New Jersey federal court, he resides in Alabama. (Compl. ¶ 10). Plaintiff's choice of forum does not dictate the law that applies to the case. Rather, the court must perform a choice of law analysis, applying New Jersey choice of law principles, to make this determination.

New Jersey resolves choice of law questions through a flexible governmental-interest approach that applies the law of the state with the greatest interest in resolving the particular issue raised in the underlying litigation. *Veazey v. Doremus*, 510 A.2d 1187, 1189 (N.J. 1986). Choice of law determinations are made on an issue-by-issue basis, and different state's laws can apply to different issues in the same case. *Erny v. Estate of Merola*, 792 A.2d 1208, 1213 (N.J. 2002); *Arias v. Figueroa*, 930 A.2d 472, 476 (N.J. Super. Ct. App. Div. 2007). In determining the law applicable to each issue, New Jersey courts apply the two-pronged governmental-interest test. *Lebegern v. Forman*, 471 F.3d 424, 428 (3d Cir. 2006). The first prong consists of determining whether a conflict of law exists between the states that have an interest in the issue. *Id.* If no conflict exists, then the choice of law is inconsequential and the court applies the laws of the forum state. *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007). However, where a conflict exists, the court moves on to the second prong of the test: a determination of which state's law applies. *Id.* As discussed in each section of this memorandum, *infra*, a conflict exists between New Jersey law and Alabama law for each of the claims made by Murdock. Thus, a conflict of law analysis under the second prong of New Jersey's test is necessary.

The second prong of the test consists of a governmental-interest analysis.[4] The line between the traditional governmental-interest approach and the "most significant relationship" test in the Restatement (Second) of Conflicts of Law, once distinct, has become blurred. *See, e.g., Veazey,* 510 A.2d 1187. What has emerged is a governmental-interest analysis in which the

---

[4] The factors considered for the governmental-interest analysis for an issue arising out of tort law are: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Fu v. Fu,* 733 A.2d 1133, 1140-41 (N.J. 1999).

4

New Jersey courts are guided by the factors of the "most significant relationship test" of the Restatement (Second) of Conflicts of Law.[5] *Erny*, 792 A.2d at 1217.

The courts, when applying this choice of law analysis in product liability, warranty, and consumer fraud claims, have found that "as is often the case in conflicts analysis, the determination of which state's law bears the more compelling relationship to the underlying policies turns on the relative interests of the corporation's home state and the consumer's home state." *Heindel v. Pfizer*, 381 F. Supp. 2d 364, 377 (D.N.J. 2004). Although "New Jersey has an interest in governing the conduct of its corporate citizens and encouraging truthful marketing and advertising of products," the court in *Heindel* found that the plaintiff's home state's interests in ensuring that its own citizens were compensated for their injuries and enforcing the standards set for product sales in the home state outweighed these interests. *Id.*

Another factor noted by the court in *Heindel* was the attenuated contacts which defendants had with New Jersey. Further, since the product at issue in *Heindel* was also advertised and purchased in plaintiff's home state, that "state has both a deterrent interest in *and* a compensation interest." *Id.* at 378. (emphasis original). Based upon this analysis, the court applied the law of the plaintiff's home state to the claims for breach of warranty and consumer fraud. In so doing, the court recognized that even in instances where the New Jersey consumer protection statute may provide greater protection to the consumer, where the plaintiffs are not residents of New Jersey the courts have found that they do "not have a 'compelling reason . . . to

---

[5]   "[F]our contacts are most relevant to the governmental-interest test in cases based on an alleged tort:  (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Lebergen*, 471 F.3d at 429 (citing *Fu*, 733 A.2d at 1142 (citing Restatement (Second) of Conflict of Laws § 145(2)).

extend to such non-domiciliary plaintiffs the benefit of its decisional law.'" *Id.* at 378 (quoting *Deemer v. Silk City Textile Mach. Co.*, 475 A.2d 648 (N.J. Super. Ct. App. 1984)).

The same reasoning has been repeatedly applied when determining the appropriate law in nationwide class actions pending in New Jersey. In cases involving similar claims to the pending actions, the courts have held that the law of each state from which plaintiffs hail applies. *See Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998) (finding that in nationwide class action, law of each plaintiff's home state would apply for breach of express and implied warranty claims and common law fraud). As explained in *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332 (D.N.J. 1997), in product liability actions, the plaintiff's home state has the most significant interests:

> Each plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws. These interests arise by virtue of each state being the place in which the plaintiffs reside, or the place in which plaintiffs bought and used their allegedly defective vehicles or the place where plaintiffs' alleged damages occurred.

*Id.* at 348. Thus, the court applied the law of each plaintiff's home state with regards to claims arising from strict products liability, violation of state consumer fraud statutes, breach of express warranty, and breach of implied warranty. *Id.*

Similarly, in the pending action, the law of Murdock's home state – Alabama – applies. Murdock and his children reside in Alabama. Furthermore, the alleged exposure to the toy trains occurred when his children played with them, presumably at their home in Alabama. There are no allegations that Murdock purchased the trains in New Jersey or that his children were exposed to the trains in New Jersey. In fact, the only tie Murdock's allegations have to New Jersey is that one of the Defendants, Toys "R" Us, has its principal place of business in New Jersey. However, there are no allegations that any actions relating to this lawsuit took place at Toys "R" Us' place

of business. Further, there are no allegations that the other two Defendants, Wal-Mart or RC2, have any ties to New Jersey. Therefore, Alabama has the greatest interest in protecting its consumers from in-state injuries caused by foreign corporations. As such, Alabama law applies to each of the claims brought by Plaintiff, Murdock.

III.    **Plaintiff's No-Injury Product Liability Complaint Should Be Dismissed In Its Entirety For Failure To State A Claim And Lack Of Standing**

The explosion of class action litigation in the last decade has been fueled in part by the increasingly common "no-injury products liability class action." Maneker, Meryl C., "Defending The No-Injury Products Liability Class Action," 14 No. 3 Prac. Litigator 13 (May 2003). "The striking feature of a typical no-injury class is that the plaintiffs have either not yet experienced a malfunction because of the alleged defect or have experienced a malfunction but not been harmed by it." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 n.4 (5th Cir. 2001). These lawsuits challenge the fundamental tenet of tort law that "the plaintiff must suffer an injury to be entitled to recover." Maneker, 14 No. 3 Prac. Litigator at 15. This principle is universal and applies equally to actions for negligence, breach of warranty, strict liability or violation of consumer fraud acts.

No-injury product liability actions have been rejected uniformly by federal and state courts across the nation, including this Court. "An overwhelming majority of courts have dismissed these unmanifested defect claims and rejected the idea that the Plaintiffs can sue manufacturers for speculative damage." *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 630 (8th Cir. 1999). These cases are generally dismissed for failure to state a claim because the plaintiff has failed to allege that any defect actually manifested itself in the product purchased by plaintiff, and the manifested defect and resultant damages are an essential element of the cause of

action. *See id.* at 627-28. "The Plaintiffs' conclusory assertions that they, as a class, have experienced damages (and the method the Plaintiffs use to calculate damages) are simply too speculative to allow [the] case to go forward." *Id.* at 629.

Federal courts in many jurisdictions have reached the same conclusion as the *Briehl* court. *See, e.g., Angus v. Shiley Inc.*, 989 F.2d 142, 147-48 (3d Cir. 1993) (affirming dismissal of claim for intentional infliction of emotional distress caused by allegedly defective implanted heart valve that had not malfunctioned or caused direct physical harm because plaintiff had not "suffered a compensable injury"); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1087 (S.D. Ind. 2001), *rev'd in part on other grounds*, 288 F.3d 1012 (7th Cir. 2002) (dismissing claims of plaintiffs seeking to recover for the possibility that tires would suffer tread separation, for the possibility that their vehicles would roll over, or for the claimed diminution in resale value due to those possibilities, because "these simply are not cognizable tort injuries"); *In re Air Bag Prod. Liab. Litig.*, 7 F. Supp. 2d 792, 805 (E.D. La. 1998) (dismissing claims of plaintiffs, who had not been injured by allegedly defective airbags, because "plaintiffs have failed to advance any allegation of manifest injury or defect, both central tenets of their tort and implied warranty claims"); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (dismissing action claiming common law fraud, negligent misrepresentation and breach of implied warranty on behalf of people who purchased vehicles with integrated child safety seats that were allegedly defective but had not malfunctioned, and seeking as damages the difference between price paid and amount they would have paid if they had known of the alleged defect, because an "allegation of possible economic loss fails to plead adequately the required damages element"); *Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 657-58 (D.N.J. 1986) (dismissing plaintiff's putative class action alleging breach of warranty and common law fraud

8

due to vehicle engine's tendency to mix oil and water in crank case, although vehicle had not malfunctioned, and seeking lost resale value as damages, because plaintiff had not attempted to sell his car but simply asserted "the bald conclusion that its value in that market has decreased").

Further, state courts which have been faced with no-injury claims have also rejected these cases. *See, e.g., Ziegelmann v. DaimlerChrysler Corp.*, 649 N.W.2d 556, 565 (N.D. 2002) (dismissing claims that the absence of the park-shift interlock constituted a material safety risk and posed risk of substantial personal injury or death to foreseeable users of the vehicles; torts of negligence, fraud and deceit require proof of actual damages as an essential element of a plaintiff's case, and if no actual loss has occurred, the plaintiff fails to establish liability); *Yu v. Int'l Bus. Mach. Corp.*, 732 N.E.2d 1173, 1177 (Ill. App. Ct. 2000) (affirming dismissal of class action to recover damages arising out of sale of computer software that allegedly was not year 2000 compliant and therefore might cause harm; "as plaintiff's claims of consumer fraud, deceptive trade practices and negligence require actual injury or damage, we hold that plaintiff's claims constitute conjecture and speculation"); *Verb v. Motorola, Inc.*, 672 N.E.2d 1287, 1295 (Ill. App. Ct. 1996) (affirming dismissal of plaintiff's class action claiming breach of express and implied warranties, negligence, strict liability, consumer fraud and deceptive trade practices based on purchases of cellular phones, which emit radio waves that might be harmful, and seeking damages for reduction in value of the phones and for increased risk of personal injury, because no proper allegations of present personal injury or damages were included in the complaint; "plaintiffs' future 'personal injury and damages' claims constitute conjecture and speculation"); *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 17 (N.Y. App. Div. 2002) (affirming dismissal of action for negligence, strict liability, breach of implied warranty, negligent concealment and misrepresentation, fraud, unfair or deceptive trade practices and civil

conspiracy based on allegedly defective front seat back rests of certain vehicles, which sought damages for alternate transportation or expense of correcting the defect, because plaintiffs "failed to plead any actual injury"; "In sum, plaintiffs have not been involved in any accidents and have not suffered any personal injuries or property damage. Moreover, plaintiffs do not allege that any seat has failed, been retrofitted or repaired, nor have plaintiffs attempted to sell, or sold an automobile at a financial loss because of the alleged defect").

Plaintiff's Complaint should be dismissed because he has failed to plead a legally cognizable injury – an essential element of each of the asserted claims and a prerequisite for federal standing.    Plaintiff alleges:   (1) that his children (on whose behalf he brings this Complaint as Father and Next Friend) have an increased risk of serious health problems; (2) that he has experienced fear and anxiety related to that increased risk; and (3) that he has paid for products that are unsuitable for use.   These alleged harms are neither manifest, nor present injuries for which Plaintiff can recover under the claims asserted.[6]   Plaintiff's claims are the same type of no-injury product-related claims that have been rejected by courts throughout the nation and should be dismissed for the same reasons.

### A.    Plaintiff Has Failed To Allege A Cognizable Injury Under Alabama Law; Thus, His Complaint Should Be Dismissed For Failure To State A Claim

"Alabama law has long required a manifest, present injury before a plaintiff may recover in tort." *Hinton v. Monsanto Co.*, 813 So. 2d 827, 829 (Ala. 2001).[7]   The Alabama Supreme Court has repeatedly refused to recognize "a 'concern' that a product 'could later' cause a harm"

---

[6] "If none of the named plaintiffs may maintain this action on their own behalf, they may not seek relief on behalf of a class." *Britt v. McKenney*, 529 F.2d 44, 45 (1st Cir. 1976); *see also Ziegelmann*, 649 N.W.2d at 565 (A "claim cannot be asserted on behalf of a class unless at least one plaintiff has suffered the injury that gives rise to the claim.")

[7] As discussed in Point II, the appropriate law in this case is Alabama.

as "an 'injury' or 'damage' under Alabama law." *Id.*; *see also Ford Motor Co. v. Rice*, 726 So. 2d 626, 629 (Ala. 1998); *Pfizer, Inc. v. Farsian*, 682 So. 2d 405, 407 (Ala. 1996).

The present injury requirement is absolute and cannot be circumvented by alleging that a defect is "manifest" because it rendered the product "unreasonably dangerous." *Rice*, 726 So. 2d at 629 ("claims based upon . . . inherent product 'defects' that have not caused any tangible injury are not viable . . . ."). Nor can it be overcome by arguing that exposure to a hazardous substance is itself an injury or that it necessitates medical monitoring in order to detect or prevent future injury and harm. "[M]ere exposure to a hazardous substance resulting in no present manifestation of physical injury is not actionable . . . where the exposure has increased only minimally the exposed person's chance of developing a serious physical disease and that person has suffered only mental anguish." *Houston County Health Care Auth. v. Williams*, 961 So .2d 795, 810-11 (Ala. 2006), *as modified on denial of reh'g*, (Jan. 12, 2007); *see also Hinton*, 813 So. 2d at 831-32 (rejecting claim for medical monitoring). A present fear of future complications is also insufficient to plead the requisite injury. The Alabama Supreme Court has held: "We do not denigrate the fear of future complications . . . [, but] that fear does not constitute a present legal injury and is not actionable, where no other present injury can be demonstrated." *Houston County Health Care Auth.*, 961 So. 2d at 811; *see also, Southern Bakeries, Inc. v. Knipp*, 852 So. 2d 712, 718 (Ala. 2002) (holding that "while fear is a real phenomenon and can be debilitating, based on the evidence present in this case we conclude that [plaintiffs] have not suffered any legally cognizable present injury").

Plaintiff has bought claims for negligence, breach of express and implied warranties, strict liability, violation of the Federal Consumer Products Safety Act, and violations of various consumer fraud acts. However, "[r]egardless of how [Plaintiff] pleads his claim, his claim is in

11

substance a product liability/personal injury claim – [he] seeks damages because of the risk" that exposure to the recalled toys may cause health problems in the future. *Farsian*, 682 So. 2d at 407; *see also Angus*, 989 F.2d at 147 (noting that although plaintiff had not pleaded her case as a classic products liability action, "there is no escaping that her action is dependent on Shiley's having supplied the valve. Thus, regardless of how Angus pleaded her claims, they include a products liability aspect").

In *Farsian*, the plaintiff alleged that the manufacturer of a heart valve fraudulently induced him to have the valve implanted by not revealing certain risks and defects. The plaintiff alleged that he would not have had the valve implanted if he had known the risks associated with the valve, and sought to recover the difference in value between the valve he received and the valve as represented, the cost of having the valve removed, compensation for his mental anguish and emotional distress, and punitive damages. 682 So. 2d 405. The Alabama Supreme Court held that the plaintiff's claim was, in substance, a product liability/personal injury claim because he was seeking damages due to the risk that this heart valve might fail, and that plaintiff's fear that his heart valve could fail in the future was not a legal injury sufficient to support his claim. *Id.* at 408. The court held that whether "couched in terms of fraud law or in terms of product liability law," plaintiff did not have a cause of action absent failure or malfunction of the valve. *Id.*

Similarly, in this case Plaintiff does not claim that the train toys have malfunctioned or failed to operate as toys; to the contrary, Plaintiff asserts that the toys were favored by his children. (Compl. ¶ 21). Nor does Plaintiff allege that his children have a present physical injury. Instead, Plaintiff seeks to recover for *an increased risk* of future health problems and for his anxiety and fear that those problems will occur. Whether Plaintiff's claim is "couched in

terms of fraud law or in terms of product liability law," risk of future injury and anxiety related to that risk are not legal injuries sufficient to support his claim. *Farsian*, 682 So. 2d at 408.

Further, as in *Hinton*, Plaintiff requests medical monitoring based on an increased risk of future health problems – *i.e.*, Plaintiff seeks an immediate remedy for a speculative future harm, not a present injury. As discussed in Point VI, *supra*, Alabama does not recognize this medical monitoring claim.

Finally, Plaintiff seeks to recover the full purchase price for the recalled toys, claiming that the toys are "unsuitable for any use." (Compl. ¶¶ 84, 91). Plaintiff essentially argues that the product he purchased is "unreasonably dangerous" and he has therefore lost the benefit of his bargain. This argument is an attempt to blend a contract claim, for which benefit of the bargain damages may be recovered, and a no-injury product liability suit which requires Plaintiff to suffer physical harm or out-of-pocket economic loss. *Coghlan,* 240 F.3d at 455 n.4. As discussed, this approach has not been accepted by the courts. Further, Plaintiff has been provided with access to a remedy for lost use of the toys—recall and replacement. In *Rice,* the court noted that disgruntled consumers of potentially defective SUVs did not have a cause of action for fraudulent suppression, but they *did* have a remedy—they could contact the National Highway Traffic Safety Administration and request that the manufacturer remedy the defect through a recall: the "holding does not leave remediless those who have purchased a [product] that threatens their safety. . . . [T]he remedy that will best promote consumer safety and address the parties' concern for their own safety is . . . a recall." 726 So. 2d at 631. In this case, the toys at issue have been recalled and the offer of replacement has been made to Plaintiff.

As to every claim asserted in the Complaint, Plaintiff cannot prove any facts that would support his claim for relief because he has not alleged a legally cognizable injury. Thus, Plaintiff has failed to state a claim upon which relief can be granted and each Count should be dismissed.

### B.    Plaintiff's Failure To Assert A Legally Cognizable Injury Deprives Him Of Standing To Bring The Action

Plaintiff's lack of cognizable legal injury deprives him of standing to bring this action.

> In order to have standing, a plaintiff must: (1) have suffered an "injury in fact," i.e., an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical; that was (2) caused by or fairly attributable to the challenged action of the defendant; and that is (3) likely redressable by a favorable decision.

*Camden County Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 256 (D.N.J. 2000) *aff'd*, 273 F.3d 536 (3d Cir. 2001) (citing *Friends of the Earth v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 120 S. Ct. 693, 704 (2000)). "Once established, lack of standing deprives this Court of subject matter jurisdiction."[8] *Id.*

As discussed in Point II.A. above, Plaintiff does not allege that any of his children have lead poisoning or even that they have elevated blood lead levels. In fact, Plaintiff does not assert *any* present ill-effect on the children as a result of playing with the toys. Instead, he alleges only that someday a problem may develop, and he is worried about that possibility. These broad allegations of anxiety and potential harm are neither concrete nor particularized. Moreover, the speculative allegation that future health problems may develop is neither actual nor imminent. These allegations may more accurately be described as conjectural and hypothetical. Thus,

---

[8] "Although the lack of standing issue gives rise to a question of this Court's subject matter jurisdiction, the proper standard to be applied to the standing issue is that of a motion to dismiss under 12(b)(6)." *Camden County Bd.*, 123 F. Supp. 2d at 246 (*citing Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir. 1991)).

Plaintiff has failed to establish an injury in fact. *Cf. Rivera v. Wyeth-Ayerst Lab.*, 283 F.3d 315, 319 (5th Cir. 2002) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (holding that because plaintiffs' had not suffered any injury from the allegedly defective drug, they failed to establish an "injury in fact" and therefore lacked standing)). Further, as discussed below, Plaintiffs various claims suffer from fatal defects so these "injuries" are unlikely to be redressed by a favorable decision.

Because Plaintiff has failed to allege an injury in fact that is likely to be redressed by a favorable decision, he lacks standing to bring this action and his Complaint should be dismissed.

### C.   Strong Policy Supports Uniform Rejection Of "No Injury" Products-Related Claims Like Those Asserted By Plaintiff

The uniform rejection of no-injury product liability actions is backed by strong public policy. Allowing plaintiffs to recover for a mere increased risk of harm, as opposed to an actual injury, defeats the loss-spreading function of product liability law. As the Fifth Circuit explained in *Willett v. Baxter Int'l, Inc.*:

> Under the current law, if the seventeen persons whose [heart] valves actually failed establish a defect, then they can recover mental anguish as a component of their damages. The damages of the seventeen are presumably incorporated into the price of the product and spread among the nineteen thousand who have purchased the valve. In contrast, under the plaintiff's theory, all nineteen thousand [patients who had similar valves implanted] would be able to seek recovery for their fear. Again, the probable recovery would be included in the price, but instead of spreading a concentrated loss over a large group, each patient would cover his own probable fear recovery (plus the costs of litigation) by paying a higher price for the heart valve in the first instance. Because no loss-spreading occurs, the money flows in a circle, from each patient (in the form of a higher price) to the company back to the same patient (in the form of a fear recovery), with a substantial portion of the higher price skimmed off for attorneys' fees. In addition, the higher price will place the product beyond the economic reach of at least some of the patients, forcing them to turn to the next best (affordable) alternative. We see little reason to adopt such a system.

929 F.2d 1094, 1100 n.20 (5th Cir. 1991); *Bravman v. Baxter Healthcare Corp.*, 794 F. Supp. 96, 101 (S.D.N.Y. 1992), *rev'd in part on other grounds*, 984 F.2d 71 (2d Cir. 1993) ("[R]ecognition of such a cause of action could have the marketplace result of increasing the price of many everyday objects to compensate all those, *i.e.,* all consumers, who fear that the objects might fail"). Thus, allowing consumers to be compensated for their fear of injury that may never occur is ultimately detrimental to broader consumer interests.

In addition to increasing the price of affected goods, imposing liability in the absence of actual injury would encourage the filing of virtually limitless lawsuits, flooding the courts. As the Third Circuit recognized in *Angus,* if the court were to recognize a cause of action in a product liability case where the product had not malfunctioned and the only alleged injury was emotional distress due to the fear that the product would cause injury, "it effectively would sanction a large, if not vast, number of lawsuits by consumers who obtained properly functioning [products]." *Angus,* 989 F.2d at 148. "Taken to its logical extreme, fear claims could eventually swallow claims for physical injuries, depriving the traditional plaintiff of adequate compensation." *Bravman*, 794 F. Supp. at 101.

## IV.    The Economic Loss Doctrine Precludes Plaintiff's Negligence Claim (Count I)

In Count I of the Complaint, Plaintiff alleges Defendants were negligent in the design, manufacture, sale, and distribution of the toy trains. (Compl. ¶ 43). Plaintiff claims that he has suffered "loss and damages" as a result. (Compl. ¶ 46).    As discussed in Point III above, Plaintiff has not alleged a compensable injury under Alabama law.[9]   For this reason alone,

---

[9] Defendants have applied Alabama law to Plaintiff's negligence claim. Although both New Jersey and Alabama follow the economic loss doctrine (*see Alloway v. Gen. Marine Indus., L.P.*, 695 A.2d 264 (N.J. 1997)), there are differences in the way each state treats claims for damages arising out of allegedly defective products.  Under New Jersey law, the Product Liability Act is

Plaintiff's negligence claim should be dismissed as injury is an essential element to any negligence claim. Moreover, Plaintiff's negligence claim must be dismissed because it is barred by the economic loss doctrine. Under Alabama law, a plaintiff cannot recover in tort for damage to the product itself:

> It has been widely recognized that one cannot recover in tort for damage to the product itself: "A defective product is a loss of the benefit of the bargain which is a contract rather than a tort action. Negligence and other tort actions have as their public policy the protection of person and property, other than the purchased product. The product itself, therefore, falls outside the protected ambit . . . ."

*Dairyland Ins. Co. v. Gen. Motors Corp.*, 549 So. 2d 44, 46 (Ala. 1989) (quoting C. Gamble & D. Corely, *Alabama Law of Damages*, § 32-8, 339 (1982)). *See also Lloyd Wood Coal Co. v. Clark Equip. Co.*, 543 So. 2d 671, 674 (Ala. 1989) (adopting economic loss rule and holding that action in tort will not lie unless there is personal injury or damage to property other than the product itself).

The economic loss doctrine prevents Plaintiff from recovering in tort for damages to the toy trains themselves. In addition, Plaintiff does not allege any personal injury, so Plaintiff cannot recover in tort on that basis. Moreover, as discussed below, Plaintiff has not alleged that the toy trains caused any compensable injury to other property.

Plaintiff asserts that the toys at issue "operated among" other toys, and that parents and other consumers "had no choice" but to remove the "***possibly***-tainted" toys from their homes. (Compl. ¶ 30) (emphasis added). This fear of an alleged "possible" injury to other toys is not

---

the sole basis of relief for harm caused by defective products; thus, common law claims, such as negligence, are subsumed by the Product Liability Act. N.J.S.A. § 2A:58C-1 through 58C-11; *Canty v. Ever-Last Supply, Co.*, 685 A.2d 1365 (N.J. Super. Ct. Law Div. 1996). In contrast, Alabama permits common law negligence claims to be brought in the product liability context. *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101 (Ala. 2003). Accordingly, an apparent conflict exists, and using the governmental-interest analysis set forth in Point II , it is clear that Alabama law applies.

compensable under Alabama law. *See Rice*, 726 So. 2d at 631 (holding that plaintiff could not recover under a fraudulent suppression theory because there was no "injury" where alleged product defect never "manifested itself in such as way as to cause any observable adverse physical or economic consequences"). In *Rice*, the plaintiffs alleged that their sport utility vehicles had a design defect which made it more likely that the SUVs would roll over. No plaintiff alleged that their SUV actually rolled over or caused personal injury or property damage. The plaintiffs sought damages for the cost to repair the SUVs. The Court found that the plaintiffs could not recover based solely on the possibility that their SUVs might malfunction and cause injury in the future. *Id.*; *See also*, *Farsian*, 682 So. 2d at 407 (holding that fear that product could fail in the future is not, without more, a legal injury sufficient to support a claim for fraud).

In this case, Plaintiff does not allege that any of the other toys that came in contact with the toys trains at issue were tainted with lead or that they suffered any manifest injury; rather, Plaintiff alleges that the other toys were "***possibly***" tainted. Under the rationales of *Rice* and *Farsian*, Plaintiff's fear that the other toys ***might possibly*** be tainted is not a compensable injury. Plaintiff has failed to allege a compensable injury to property other than the product at issue. Accordingly, Plaintiff's negligence claims are barred by the economic loss doctrine and should be dismissed.

V.     **Plaintiff Does Not Allege The Threshold Requirements For His Breach of Warranty Claims (Counts II & III)**

In Counts II and III of his Complaint, Plaintiff seeks damages for breach of the implied warranties and, also, breach of express warranty. These claims must be dismissed as the Plaintiff failed to provide notice of breach and the requisite privity is lacking.

A.    **Plaintiff's Failure To Provide Pre-Suit Notice Of The Alleged Breach Is Fatal To His Claims For Breach Of Implied And Express Warranties**

Alabama law is well established regarding the need for pre-suit notice of an alleged breach.[10] "Under Alabama law, notice of breach is a condition precedent to bringing a breach of warranty action, which must be affirmatively pleaded in the complaint." *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1283 (M.D. Ala. 2001) (applying Alabama law); *Bennett v. United Auto Parts, Inc.*, 315 So. 2d 579, 581 (Ala. 1975). As such, notice must precede the filing of the complaint.[11] *Hobbs*, 134 F. Supp. 2d at 1285. The "mere filing a lawsuit …[does] not constitute notice of breach under Alabama law." *Id.*

Alabama courts have not hesitated to dismiss claims for breach of express and implied warranties when some form of notice was not provided prior to filing a lawsuit. *See Parker v. Bell Ford, Inc.*, 425 So. 2d 1101, 1102 (Ala. 1983) (court directed verdict in favor of the manufacturer and seller on claims for breach of implied and express warranties based upon plaintiff's failure to provide pre-suit notice of breach). In the pending case, Plaintiff does not allege that he gave notice of any alleged breach to Defendants prior to filing this lawsuit. As such, Plaintiff has failed to comply with one of the threshold requirements for maintaining a

---

[10] As set forth above, Alabama law clearly requires notice of a breach of warranty, express or implied, prior to filing a lawsuit. However, the law in New Jersey is less settled with regards to notice, especially as it relates to a remote manufacturer. *Cippolone v. Liggett Group, Inc.,* 683 F. Supp. 1487, 1497-98 (D.N.J. 1988), *rev'd in part on other grounds*, 505 U.S. 504 (1992). This difference in the laws creates a conflict of laws which satisfies the first prong of the governmental interest analysis.

[11] When personal injury occurs the Alabama courts have held that notice is not required. However, as there is no personal injury alleged in this case, this exception is not applicable. *See, Simmons v. Clemco Indus.,* 368 So. 2d 509, 514-15 (Ala. 1979).

claim based upon breach of warranty – both express and implied and these claims, Counts II and III must be dismissed, in their entirety.[12]

### B.    Plaintiff Lacks Privity With RC2 Defendants

Plaintiff does not allege that he is in privity with RC2 Corporation.  In fact, he specifically states that the toys were purchased from Wal-Mart Stores, Inc. and Toys "R" Us, Inc. As such, RC2 Corporation is not in vertical privity with Plaintiff.[13]  In many states, including Alabama, privity is a threshold requirement for bringing a breach of implied warranty action in cases which do not involve personal injury.  *See State Farm Fire & Cas. Co. v. J.B. Plastics, Inc.*, 505 So. 2d 1223, 1227 (Ala. 1987) ("While Alabama's version of U.C.C. § 2-318 has abolished the privity requirements in actions involving injuries to natural persons, the privity requirements still remain [ ] in cases of strictly economic injury").  Therefore, Plaintiff fails to comply with another threshold requirement for his breach of implied warranty claim.  As such, Count II, Breach of Implied Warranty, and Count IV, Negligence and Breach of Warranty for Medical Monitoring Purposes should be dismissed.[14]

---

[12] Count IV should also be dismissed to the extent that it is based upon a breach of warranty claim.

[13] Alabama and New Jersey have adopted different alternatives for Section 2-318 of the Uniform Commercial Code.  *See* Ala. Code § 7-2-318 and N.J.S.A. § 12A:2-318.  Further, in interpreting these rules, New Jersey has eliminated the need for vertical privity with regards to economic injuries.  *Spring Motors Dist., Inc. v. Ford Motor Co.*, 489 A.2d 660, 663 (N.J. 1985).  As set forth above, Alabama law clearly requires privity in this situation.  As such, there is a conflict of law which satisfies the first prong of the governmental interest analysis.

[14] The Alabama courts have not addressed the breach of express warranty claim in cases similar to the pending matter.  Other courts which have considered the claim, have not reached a conclusion.  *Hobbs*, 134 F. Supp. 2d at 1281-82.

**VI.**    <u>Medical Monitoring (Counts IV & V) Is Not A Recognized Claim In Alabama</u>

In Counts IV and V of his Complaint, Plaintiff seeks a Court-ordered and supervised medical monitoring program funded by Defendants based upon various claims, such as negligence, breach of express and implied warranties, and strict liability. (Compl. ¶¶ 70, 76). The basis for dismissal related to the general claims of negligence and breach of warranties are explained above. In addition, Counts IV and V should be dismissed because the only damages sought are for medical monitoring which is not a recognized claim in Alabama, the Plaintiff's residence.[15]

The Alabama Supreme Court held that Alabama law does not recognize a cause of action for medical monitoring in the absence of a manifest physical injury or illness. *Hinton*, 813 So. 2d at 832. In reaching this conclusion, the court held that "Alabama law has long required a manifest, present injury before a plaintiff may recover in tort." *Id.* at 829 (citations omitted). "Opening the courts generally for compensation for fear of future disease would be a dramatic change in the law and could engender significant unforeseen and unforeseeable consequences; awarding such compensation is better left to the Legislature." *Southern Bakeries*, 852 So. 2d at 718. In fact, recognition of medical monitoring would require the court to "stand Alabama tort law on its head in an attempt to alleviate these concerns about what *might* occur in the future." *Hinton*, 813 So. 2d at 831 (emphasis original).

---

[15] Plaintiff has not alleged in his Complaint the applicable law for the medical monitoring claims. When the Superior Court of New Jersey in *Ware v. Ciba-Geigy Corp.*, No. ATL-L-243-04, 2005 WL 1563245 (N.J Super. Ct. Law Div. May 20, 2005) performed a choice of law analysis on this issue it found that an actual conflict existed between New Jersey and Alabama law. As such, the first prong of the governmental interest analysis is met. *Id.* at *6. Although Defendants believe that they prevail under either State's laws, the choice of law analysis, as set forth in this Point VI and in Point II, *supra,* dictates that Alabama law should be applied.

Subsequently, in *Ware v. Ciba-Geigy Corp.*, No. ATL-L-243-04, 2005 WL 1563245 (N.J Super. May 20, 2005), the New Jersey state court had an opportunity to determine whether an Alabama plaintiff, who filed suit in New Jersey, but who had no apparent contacts with New Jersey could obtain relief in the form of medical monitoring. The court, in reliance upon *Hinton* held that medical monitoring was "not allowed as a form of relief under Alabama law." *Id.* at *3. In determining that Alabama law was applicable, the court looked to the lack of contacts which the plaintiffs had with New Jersey, the place of exposure, and the interests of the states. *Id.* at *8, 9. The court also noted that to apply New Jersey law in this case, "would only encourage forum shopping, which would increase litigation and needlessly burden this state's courts." *Id.* at *9 (citations omitted). Finally, the court recognized that New Jersey courts should not take it upon themselves to come into Alabama and impose medical monitoring in Alabama, against the wishes of the Alabama Supreme Court. *Id.*

Similarly, in this case, this Court should also look to Alabama law to determine whether Plaintiff may maintain a claim for medical monitoring. Plaintiff has not alleged any "manifest, present injury." As such, he has no viable claim for medical monitoring and Counts IV and V of Plaintiff's Complaint should be dismissed.

## VII.  Plaintiff Fails To Allege The Threshold Amount In Controversy Necessary To Maintain A Claim Under The Consumer Product Safety Act (Count VI)

Count VI purports to assert a claim under § 2072 of the Consumer Product Safety Act (the "CPSA"), 15 U.S.C. §§ 2051-2083. The Count should be dismissed as Plaintiff has not alleged that his damages exceed the minimum amount in controversy required by the statute. Section 2072 states:

> Any person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or

any other rule or order issued by the Commission may sue any person who knowingly (including willfully) violated any such rule or order in any district court of the United States in the district in which the defendant resides or is found or has an agent, shall recover damages sustained, and may, if the court determines it to be in the interest of justice, recover the costs of suit, including reasonable attorneys' fees (determined in accordance with section 11(f) [15 USCS § 2060(f)]) and reasonable expert witnesses' fees; *Provided,* That **the matter in controversy exceeds the sum or value of $ 10,000, exclusive of interest and costs**, unless such action is brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

15 U.S.C. § 2072(a) (emphasis added).

When the CPSA was enacted in 1972, Section 2072 did not contain the "matter in controversy" language highlighted above. At that time, the requirements for federal question subject matter jurisdiction included a minimum $10,000 amount in controversy. The Federal Question Jurisdictional Amendments of 1980, P.L. 96-486 (December 1, 1980), amended 28 U.S.C. § 1331 to eliminate the $10,000 amount in controversy requirement for all cases "aris(ing) under the Constitution, laws, or treaties of the United States," but *specifically retained the $10,000 amount in controversy requirement for suits under Section 2072.* Section 2072 was amended to remove the phrase "subject to the provisions of section 1331 of title 28, United States Code, as to the amount in controversy" and add "[p]rovided, [t]hat the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs...." *See* 15 U.S.C.A. § 2072; *see also Riegel Textile Corp. v. Celanese Corp.*, 649 F.2d 894, 899 n.9 (2d Cir. 1981). Thus, the $10,000 jurisdictional requirement was preserved with respect to claims asserted under Section 2072 of the CPSA[16] and a claim may not be pursued unless the plaintiff can demonstrate that at least $10,000 is in controversy.

---

[16] *See also* 32A Am. Jur. 2d Federal Courts § 884 ("[T]here is no jurisdictional amount requirement in federal question cases . . . except for those arising under the Consumer Product

Congress underscored its intent that "only private damage suits under the CPSA which involve more than $10,000 in controversy be litigated in federal court," *Riegel*, 649 F.2d at 902, by adding a new subpart to Section 2072 that penalizes a plaintiff for bring a claim with an insufficient amount in controversy:

> Except when express provision is made in a statute of the United States, in any case in which the plaintiff is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interests and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

15 U.S.C. § 2072(b) (added by the Federal Question Jurisdictional Amendments of 1980).

Plaintiff has not alleged – nor can he show – that his claim under Section 2072 will exceed $10,000, exclusive of interests and costs. One reason for this difficulty is that under Section 2072, a plaintiff may only recover "damages sustained" from an "injury." Although Section 2072 does not "expressly define the type of injury for which a private right of action is provided, or explicitly identify the "persons" whom Congress intended to include, the legislative history shows that Congress believed that it was creating a private federal remedy for injured consumers." *Sanitoy, Inc. v. Shapiro*, 705 F. Supp. 152, 158-59 (S.D.N.Y. 1989).

"The legislative history provides no basis for concluding that Congress intended that § 2072 would provide a federal right of action for . . . purely economic injury."[17] *Id.* at 159.[18] To

---

Safety Act [or other acts specifying a threshold amount in controversy]." (footnotes omitted)); *Riegel*, 649 F.2d at 902 (referring to the $10,000 minimum as "this jurisdictional requirement").

[17] "A review of the legislative history is appropriate because 'a thing may be within the letter of the statute and yet not within its spirit, nor within the intention of its makers.'" *Id.* at 159. (quoting *Church of The Holy Trinity v. United States*, 143 U.S. 457, 459, 36 L. Ed. 226, 12 S. Ct. 511 (1892)).

[18] The court in *Sanitoy* distinguished *Griswold Insulation Co. v. Lula Cotton Processing Co.*, 540 F. Supp. 1334 (M.D. Tenn. 1982), a case in which economic damages were allowed, because the holding in that case relied upon 15 U.S.C. § 2082, a provision that was added to the statute six

the contrary, the Report of the House Committee on Interstate and Foreign Commerce accompanying H.R. 15003 states:

> The Committee anticipates, in cases in which it is established that **death, personal injury, or illness** occurred by reason of noncompliance with the consumer product safety rule or section [2064] order, that the courts will in general apply State law as to questions of which types of damages may be recovered and which parties in addition to the injured person can recover damages. The committee intends that any person who recovers damages by reason of personal injury, illness, or death, would also be able to recover for any property damage occurring by reason of the noncompliance giving rise to the injury, illness, or death.

*Kent Village Assocs. Joint Venture v. Smith*, 657 A.2d 330, 340-41 (Md. Spec. Ct. App. 1995) (quoting H.R.Rep. No. 1153, 92nd Cong., 2d Sess. 47-48 (1972)) (emphasis added).

Plaintiff asserts in his Complaint that he and his children "have suffered an increased risk of serious health problems and have paid for products unsuitable for any use" as a result of violations of a consumer product safety rule. (Compl. ¶ 84). These alleged injuries are not compensable under Section 2072. The cost of the toys purchased is mere economic loss (and is unlikely to exceed $10,000 in any event), and an "increased risk" of future health problems is not a present personal injury. Thus, neither alleged injury is a "personal injury, illness, or death" compensable under the act.

The amount in controversy is decided from the complaint itself and is measured by "a reasonable reading of the value of the rights being litigated." *Angus*, 989 F.2d at 145-46. Because Plaintiff has not alleged any injury for which he can seek recovery under Section 2072 and, even if allowed, there are no allegations in the Complaint that Plaintiff has sustained a loss

---

years after the adoption of § 2072 and was directed exclusively to cellulose insulation. The court held that § 2082 has "no apparent connection with the private remedy created by § 2072," and the "*Griswold* case is not persuasive on the critical issue -- what was Congress' intention in enacting § 2072." 705 F. Supp. at 159.

with a value of at least $10,000, Plaintiff's claims fail to meet the threshold amount in controversy and cannot sustain a claim under the CPSA. Therefore, Plaintiff's claim for violation for the Consumer Product Safety Act, Count VI, should be dismissed.

**VIII.    Plaintiff Fails To State A Claim For Violation Of State Statutory Consumer Fraud Act (Count VII)**

Plaintiff's state statutory consumer fraud action must be dismissed for failure to state a claim upon which relief can be granted.

*First*, The Alabama Deceptive Trade Practices Act ("ADTPA")[19] expressly prohibits private individuals from bringing class actions under ADTPA: "A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class . . . " Ala. Code § 8-19-10(f) (1975). *See Ex parte Exxon Corp.*, 725 So. 2d 930, 933 (Ala. 1998) (holding that "Alabama law does not allow consumers to bring class actions based on deceptive trade practices"). Thus, Plaintiff's class action consumer fraud claim does not state a claim under Alabama law and should be dismissed, and the New Jersey Consumer Fraud Act does not apply.

*Second*, ADTPA allows a private right of action only where the conduct complained of causes "monetary damage." Ala. Code § 8-19-10 (a). *See Billions v. White and Stafford*

---

[19] Plaintiff purports to bring an action under the consumer fraud statutes of New Jersey, California, Arkansas, and Illinois, without attempting to make any connection between Plaintiff—an Alabama resident—and these states. There is a conflict in the statutory consumer fraud laws of each of these states. *See Fink v. Ricoh Corp.*, 839 A.2d 942, 974-82 (N.J. Super. Ct. Law Div. 2003) (applying New Jersey's conflict of law analysis and finding that state statutory consumer fraud statues vary substantially from state-to-state, requiring the court to advance to the second prong of the governmental interest test: "Having established numerous conflicts in the consumer fraud law of New Jersey as compared with the provisions in consumer fraud statutes of numerous other states, '[t]he second prong of the governmental-interest analysis requires the court to determine which state has the most significant relationship to the occurrence and the parties' . . . " *Id.* at 982 (quoting *Fu,*733 A.2d at 1138)). As discussed in Section III of this Memorandum, the governmental-interest analysis demonstrates that Alabama law is applicable. Thus, Defendants analyze Plaintiff's state statutory consumer fraud claim under ADTPA.

*Furniture Co., Inc.*, 528 So. 2d 878, 880 (Ala. Civ. App. 1988) (finding that plaintiff did not have cause of action under ADTPA where there was no showing that he suffered monetary damages as a result of the defendants' conduct).   In this case, Plaintiff merely alleges that he has "suffered an increased risk of serious health problems and [has] paid for products that are unsuitable for any use."  (Compl. ¶91).  These allegations fail to satisfy the "monetary damage" requirement of ADTPA.

With regard to Plaintiff's claim that there is an "increased risk of serious health problems," Plaintiff is merely seeking damages for fear of a future injury.  Such a claim does not allege any "monetary damage" as required by ADTPA.  Moreover, as set forth in Point III.A., *supra,* such a claim is not a cognizable present injury under Alabama law and, as such, is not a compensable "monetary damage."

Likewise, Plaintiff's allegation that he "paid for products that are unsuitable for any use" fails to meet the "monetary damage" requirement under the ADTPA.  As discussed in Point III.A., *supra,* Plaintiff has been provided with a remedy for his claim that he "paid for products that are unsuitable for any use."  Thus, he has failed to meet the monetary damages requirement under ADTPA.

*Third*, Plaintiff's claim must be dismissed because he did not provide the notice required under ADTPA.  Ala. Code § 8-19-10(e) provides, "At least 15 days prior to the filing of any action under this section, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be communicated to any prospective respondent ..."   Where a plaintiff fails to comply with this notice requirement, the plaintiff is precluded from recovering under the ADTPA.  *Givens v. Rent-A-Center, Inc.* 720 F. Supp 160, 162 (S.D. Ala. 1988) *aff'd,* 885 F.2d 879 (11th Cir. 1989).

In this case, none of the Defendants received the 15-day notice, and both Wal-Mart and Toys "R" Us have places of business in Alabama. Accordingly, Plaintiff's claim must be dismissed.

Finally, Plaintiff's state statutory consumer fraud claim must be dismissed because Plaintiff failed to plead his consumer fraud claim with the particularity required under Fed. R. Civ. P. 9(b). New Jersey District Courts and have held that like claims for common law fraud, claims under consumer fraud statutes must satisfy Rule 9(b)'s specificity requirement. *See Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 510-11 (D.N.J. 1999). In a class action, the individually named plaintiff must meet Rule 9(b)'s pleading requirements independently. *In re the Prudential Ins. Co.*, 975 F. Supp. 584, 597 (D.N.J. 1997). The complaint must contain "sufficient detail as to each plaintiff's claims to apprise [the defendant] of that plaintiff's exact grounds for relief and the specific conduct that plaintiff charges." *Id.* In this case, Plaintiff's state statutory consumer fraud claim fails to allege how the specific conduct of each named Defendant violates the ADTPA. Accordingly, Plaintiff's state statutory consumer fraud claim must be dismissed for failure to comply with Rule 9(b).

## CONCLUSION

For the foregoing reasons and based on the foregoing authorities, Defendants respectfully ask this Court to grant their Motion to Dismiss, and to dismiss all claims in the Class Action Complaint filed by Plaintiff.

Dated:  October 10, 2007                    EDWARDS ANGELL PALMER & DODGE LLP


By:   *s/Dennis M. Reznick*
          Dennis M. Reznick (DR4841)
          Charles W. Stotter (CS4313)

One Giralda Farms
Madison, NJ 07940
(973) 520-2300

Judith S. Okenfuss, Esq. (*Admitted Pro Hac Vice*)
James L. Petersen, Esq. (*Admitted Pro Hac Vice*)
ICE MILLER LLP
One American Square, Suite 3100
Indianapolis, IN  46282-0200

*Attorneys for Defendants RC2 Corporation, Learning Curve Brands, Inc., Wal-Mart Stores, Inc., and Toys "R" Us, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2007, a true copy of the within Memorandum in Support of Defendants' Motion to Dismiss Class Action Complaint was served pursuant to the Federal Rules of Civil Procedure, and/or the District of New Jersey's Local Civil Rules and/or the District of New Jersey's ECF Policies and Procedures and by sending same via first class mail service offered by the U.S. Postal Service, in postage paid envelopes addressed to the following counsel for the parties at the addresses indicated:

Peter S. Pearlman, Esq.
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 Plaza West-One
Saddle Brook, NJ 07663

*Attorney for Plaintiff*

Jack Reise, Esq.
Stuart A. Davidson, Esq.
James L. Davidson, Esq.
LERACH COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432-4809

*Attorneys for Plaintiff*

Executed on: October 10, 2007

Charles W. Stotter

30

I/2019667.1